[No. B048809. Second Dist., Div. Two. June 11, 1991.]

TATIANA BOLANOS et al., Plaintiffs and Respondents, v.
ROUBEN KHALATIAN, Defendant and Appellant.

## COUNSEL

Schmid, O'Hagan, Norek & Miller, Gordon T. Ownby, Susan Schmid, LaFollette, Johnson, De Haas & Fesler, Louis H. De Haas, Janice Rourke Hugener, Thelen, Marrin, Johnson & Bridges, Teresa J. Hermosillo and W. Glenn Cornell for Defendant and Appellant.

No appearance for Plaintiffs and Respondents.

## OPINION

**FUKUTO, J.**—Appellant Rouben Khalatian, M.D., appeals from an order denying his petition to stay further proceedings and compel arbitration of the medical malpractice action instituted by respondents Inez Chavez, Jose Bolanos[1] and their child Tatiana Bolanos. In the malpractice action, it is alleged that negligent care was rendered to Inez Chavez prior to and during delivery of her child, Tatiana, by her obstetrician, Dr. Khalatian, as a result of which Tatiana sustained an injury to her arm. The first cause of action is by Tatiana for general negligence. The second and third causes of action are by Inez Chavez for general negligence and negligent infliction of emotional distress. The fourth cause of action is by Jose Bolanos as a direct witness to the injuries caused to Tatiana.

---

[1]Jose Bolanos is also identified in the record as Jose Chavez.

After answering the complaint, Dr. Khalatian petitioned the court to stay the civil proceedings and to compel arbitration pursuant to an arbitration agreement signed by Inez Chavez and Dr. Khalatian.

Dr. Khalatian's evidence at the hearing on the petition was as follows:[2] On October 5, 1988, Inez Chavez initially visited Dr. Khalatian for obstetric care and treatment. She was approximately 25 weeks pregnant at that time. From October 5, 1988, Dr. Khalatian regularly checked the progress of her pregnancy and on December 16, 1988, delivered respondent Tatiana Bolanos. (It is alleged that sometime shortly before or during this delivery the injuries occurred.) At her initial visit on October 5, 1988, Inez Chavez was given a physician-patient arbitration agreement. Since Inez Chavez did not read English, a Spanish version of the agreement was provided to her. She signed and dated it. The agreement starts off, as follows: "Article 1: Agreement to Arbitrate: It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration." Immediately above the patient's signature line, the agreement has in 10-point bold red type: "NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE I OF THIS CONTRACT."[3]

In opposition to the petition to arbitrate, Inez Chavez declared: "1. I have the equivalent of a fifth grade education. [¶] 2. I don't read English at all. [¶] 3. I read only limited Spanish, and that with substantial difficulty. [¶] 4. The signature on the signature line for the patient on Exhibit A is my signature. However, I do not remember signing this document specifically, but only that I was given several documents to sign by persons at Dr. Rouben Khalatian's office before I could receive medical treatment. [¶] 5. No explanation [regarding] this document was made to me by Dr. Khalatian or

---

[2]Following the court's ruling on the petition to compel arbitration, the respondents' counsel's motion to withdraw as attorney of record was granted in the trial court. Respondents apparently have not retained other counsel as no brief has been filed in their behalf. The respondents having filed no responsive briefs, we assume the correctness of the statement of facts in appellant's brief. (Cal. Rules of Court, rule 17(b); *Moreno* v. *Mihelis* (1962) 207 Cal.App.2d 449, 450 [24 Cal.Rptr. 582].)

[3]The quoted language contained in Article 1 and the warning in 10-point bold red type are required for medical malpractice arbitration agreements. (Code Civ. Proc., § 1295.)

anyone else at this office. [¶] 6. My attorneys have read to me this document so I fully understand its meaning."

The trial court denied the petition. As to Inez Chavez, the court stated it could not "say by a preponderance of the evidence or even a lower standard of convincing evidence that the waiver was executed in a knowing and intelligent fashion." As to Tatiana and Jose Bolanos, the court stated it "cannot see how an agreement for arbitration can affect third parties."

■ Dr. Khalatian seeks reversal of the trial court's order contending (1) "The agreement is valid and is binding on a person who fails to read it before signing it"; and (2) "[t]he agreement applies to the claims of the father and the child, though they were not signatories."

The arbitration agreement here complies with the requirements of Code of Civil Procedure section 1295 and, thereby, as a matter of public policy, "is not a contract of adhesion, nor unconscionable nor otherwise improper . . . ." (Code Civ. Proc., § 1295, subd. (e).) "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.)

Since the agreement here is not one of adhesion, the general rule, that one who signs an agreement cannot avoid its terms on the ground that he failed to read it, is applicable. (*Izzi* v. *Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318 [231 Cal.Rptr. 315]; *Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 710 [131 Cal.Rptr. 882, 552 P.2d 1178].) When a person with the capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, coercion or excusable neglect, avoid its terms on the ground he failed to read it before signing it. (*Bauer* v. *Jackson* (1971) 15 Cal.App.3d 358, 370 [93 Cal.Rptr. 43].)

We conclude that under the circumstances present here, Inez Chavez is bound by the arbitration agreement. First, we note that her declaration does not say that she could not read or understand the agreement; only that she is able to read "only limited Spanish" and that she does not remember signing it. We note also that she does not offer any evidence that she was forced or tricked into signing the agreement. Her statement that "[she] was given several documents to sign by persons at [appellant's] office before [she] could receive medical treatment," is insufficient to establish that she was coerced to sign the agreement or that she signed the agreement because of excusable neglect. (See *Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d 746, 756-757 [163 Cal.Rptr. 223].) Her visit on October 5, 1988, was a routine office visit for a prenatal examination. Completing forms giving the

patient's name, address, health history, information about insurance coverage, etc., is a regular and normal procedure on an initial visit to a physician. There is no suggestion that her physical condition was such that she required immediate medical attention or that she involuntarily signed the documents in order to receive any urgent medical treatment.

We next turn to the nonsignatories to the agreement, Tatiana and Jose Bolanos. The trial court ruled that they, being third parties who did not sign the agreement, are not bound by its terms.

The agreement signed by Inez Chavez also contained the following: "Article 2: All Claims Must be Arbitrated: It is the intention of the parties that this agreement bind all parties whose claims may arise out of or relate to treatment or services provided by the physician including any spouse or heirs of the patient and any children, whether born or unborn, at the time of the occurrence giving rise to any claim. In the case of any pregnant mother, the term 'patient' herein shall mean both the mother and the mother's expected child or children." Article 2 makes it clear that the agreement was intended to bind *all* parties whose claims arise out of or related to the treatment provided to Inez Chavez.

As to Tatiana Bolanos, Inez Chavez clearly had the authority to bind her child to arbitrate claims related to medical service for her. (*Doyle* v. *Giuliucci* (1965) 62 Cal.2d 606, 610 [43 Cal.Rptr. 697, 401 P.2d 1].) Code of Civil Procedure section 1295, subdivision (d) reads, "Where the contract is one for medical services to a minor, it shall not be subject to disaffirmance if signed by the minor's parent or legal guardian." We see no logic in not applying this subdivision for medical services to a minor who at the time was unborn. (*Wilson* v. *Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891, 896-899 [190 Cal.Rptr. 649].)

Jose Bolanos's claim against Dr. Khalatian is apparently based upon alleged emotional distress suffered by him as a direct witness to the injuries of Tatiana Bolanos. In *Gross* v. *Recabaren* (1988) 206 Cal.App.3d 771 [253 Cal.Rptr. 820], we noted the split in authorities whether an arbitration agreement could be applicable to one who was not a signatory to the agreement. We held in that case that "where, as here, a patient expressly contracts to submit to arbitration 'any dispute as to medical malpractice,' and that agreement fully complies with Code of Civil Procedure section 1295, it must be deemed to apply to *all* medical malpractice claims arising out of the services contracted for, regardless of whether they are asserted by the patient or a third party." (*Id.* at p. 781.) We remain of the same view.

The order under review is reversed and the cause remanded so the trial court may enter a new order granting appellant's motion for an order

compelling arbitration as to all respondents. Appellant shall receive his costs on appeal.

Roth, P. J., and Gates, J., concurred.