[No. A070798. First Dist., Div. Four. July 3, 1996.]

COUNTY OF CONTRA COSTA et al., Cross-complainants and Respondents, v.
KAISER FOUNDATION HEALTH PLAN, INC., et al., Cross-defendants and Appellants.

238

**COUNSEL**

Marion's Inn, Kennedy P. Richardson, Yvonne M. Pierrou, McNamara, Houston, Dodge, McClure & Ney, Richard E. Dodge and Denise Billups-Slone for Cross-defendants and Appellants.

Low, Ball & Lynch, David B. Lynch, Dale L. Allen, Jr., Christopher E. Arras, Gordon, DeFraga, Watrous & Pezzaglia, Thomas A. Watrous, McLemore, Collins & Toschi, Gregory Michael Doyle and Rebecca F. Weisman for Cross-complainants and Respondents.

**OPINION**

**REARDON, J.**—In this case, we hold that an agreement to arbitrate between a plaintiff-patient and a defendant-health care provider does not bind a cross-complainant who was not a party to the agreement and who now seeks equitable indemnity from the health care provider.

## I. FACTS

The facts on appeal are undisputed. On November 16, 1993, pedestrian Darlene Bonanno crossed the Contra Costa County intersection of Pacheco

Boulevard and De Normandie Way in order to reach a bus stop maintained by Central Contra Costa County Transit Authority. Bonanno—who was mentally retarded—was injured when struck by a motor vehicle that had been, in turn, struck by Jeremy Joseph McLain's vehicle. She was later treated at Kaiser hospital in Martinez.

In February 1994, Bonanno filed a complaint by and through her guardian ad litem, Robert Bonanno. She sued, inter alia, respondents Contra Costa County, the transit authority and McLain, and appellants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals and the Permanente Medical Group, Inc.[1] She alleged causes of action for negligence against McLain, maintaining a dangerous condition of public property against the county and its transit authority, negligent provision of public services against the transit authority, and medical malpractice against Kaiser.

Kaiser moved to compel arbitration of Bonanno's claims alleged against it and to stay the trial court proceedings. (See Code Civ. Proc., § 1281.2.)[2] Bonanno's Kaiser health plan required that all medical malpractice claims be submitted to binding arbitration. In May 1994, the trial court granted this motion to compel arbitration. In July 1994, Bonanno filed an amended complaint, alleging the same essential causes of action.

The county, its transit authority and McLain each filed cross-complaints for equitable indemnity against Kaiser. Kaiser answered the cross-complaints of the county and McLain, alleging that they were subject to the mandatory arbitration provisions of Bonanno's health plan. Kaiser moved to compel arbitration of the cross-complaints filed by the county and McLain and to stay the action pending the outcome of arbitration. (See § 1281.2.) In the event that the motions to compel and stay were not granted, Kaiser sought to sever these two cross-complaints against it from Bonanno's complaint and from the cross-complaints against any other cross-defendants. (See § 1281.4.) The county, the transit authority and McLain opposed the motion to compel arbitration, contending that they were not signatories to the arbitration agreement and thus, could not lawfully be bound by it.

The trial court denied the motion to compel arbitration of the cross-complaints and granted the motion to sever the cross-complaints from the complaint. The order applies to the cross-complaints filed by the county, the transit authority and McLain. Kaiser appeals the order, contending that all

---

[1]For convenience, appellants Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals and the Permanente Medical Group, Inc., will be referred to collectively as "Kaiser."

[2]All undesignated statutory references are to the Code of Civil Procedure.

cross-claims must be arbitrated and the trial court's contrary ruling defeats both the agreement and the Medical Injury Compensation Reform Act's (MICRA) public policy. (See §§ 1294, subd. (a), 1295.) We affirm the order.

## II. Standard of Review

■ The issues presented on appeal turn on the interpretation of the arbitration agreement and statutes. As they are all questions of law, we are not bound by the trial court's interpretation, but must construe the instrument anew on appeal. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721]; *Poag* v. *Winston* (1987) 195 Cal.App.3d 1161, 1173 [241 Cal.Rptr. 330] [written instrument]; see *McCorkle* v. *State Farm Ins. Co.* (1990) 221 Cal.App.3d 610, 614 [270 Cal.Rptr. 492] [insurance policy].)

## III. Arbitration of Indemnity Claims

### A. *Introduction*

First, Kaiser contends that the indemnity claims raised by the county, the transit authority and McLain are within the express scope of the arbitration provision and resemble other types of parasitic claims by nonsignatories that must be arbitrated. It argues that appellate precedents and equitable considerations require such derivative claimants to submit to arbitration despite their lack of prior consent.

On the petition of a party to an arbitration agreement alleging a written agreement to arbitrate a controversy that another party refuses to submit to arbitration, the court must order the parties to arbitrate their dispute. (§ 1281.2.) Bonanno's agreement with Kaiser provided that: "Any claim . . . shall be submitted to binding arbitration if: [¶] (1) The claim is asserted by . . . [¶] . . . [¶] (c) Any person claiming that a duty to him or her arises from a Member's relationship to one or more Respondents. [¶] (2) The claim is asserted against . . . the following [Respondents]: [¶] (a) Kaiser Foundation Health Plan, Inc., [¶] (b) Kaiser Foundation Hospitals . . . [or] [¶] (c) The Permanente Medical Group, Inc. [¶] . . . [¶] (3) The claim arises from alleged violation of any duty incident to or arising out of this Agreement, including any claim for medical or hospital negligence or for premises liability, irrespective of the legal theories upon which the claim is asserted." Each of the equitable indemnity cross-claims against Kaiser is based on the theory that Kaiser breached its duty to provide health care to Bonanno and is thus more at fault than the cross-complainants themselves.

### B. *Cross-complainants as Nonsignatories*

Assuming arguendo that the language of this agreement covers cross-claims for equitable indemnity (see, e.g., *Mormile* v. *Sinclair* (1994) 21 Cal.App.4th 1508, 1515 [26 Cal.Rptr.2d 725] [wife's arbitration agreement with physician was intended to include nonsignatory spouse's loss of consortium claim within its ambit]), the fact remains that none of the cross-complainants were signatories to the agreement. They never agreed to submit their claims to arbitration. On this ground, they persuaded the trial court that they were not required to submit their cross-claims to arbitration. On appeal, Kaiser contends that the cross-claims must nevertheless be arbitrated because they are derivative or parasitic claims that depend on Bonanno's rights against Kaiser. If the cross-complainants' claims turn on its duty to Bonanno and the breach of its duty to her, Kaiser reasons that the cross-complainants must be bound to arbitrate their cross-claims as she is so bound.

■ The California cases binding nonsignatories to arbitrate their claims fall into two categories. In some cases, a nonsignatory was required to arbitrate a claim because a benefit was conferred on the nonsignatory as a result of the contract, making the nonsignatory a third party beneficiary of the arbitration agreement. In other cases, the nonsignatory was bound to arbitrate the dispute because a preexisting relationship existed between the nonsignatory and one of the parties to the arbitration agreement, making it equitable to compel the nonsignatory to also be bound to arbitrate his or her claim. Kaiser argues that the cross-complainants fall in the second category because, in its view, their claims are derivative of Bonanno's causes of action.

Appellate courts have stated that arbitration agreements are enforced with regularity against nonsignatories. (See, e.g., *Mormile* v. *Sinclair*, *supra*, 21 Cal.App.4th at p. 1511.) However, a preexisting relationship between the nonsignatory and one of the parties to the arbitration agreement is a common factor in these cases. For example, when a patient who agreed to arbitration brings a medical malpractice action against a physician, some courts hold that the patient's spouse must arbitrate a loss of consortium cause of action even though the spouse did not sign the arbitration agreement. (*Id.* at pp. 1511-1516; *Gross* v. *Recabaren* (1988) 206 Cal.App.3d 771, 781 [253 Cal.Rptr. 820].) Minors are bound by a parent's agreement to arbitrate medical malpractice claims filed against a health care provider. (§ 1295, subd. (d); *Doyle* v. *Giuliucci* (1965) 62 Cal.2d 606, 609-610 [43 Cal.Rptr. 697, 401 P.2d 1]; see *Pietrelli* v. *Peacock* (1993) 13 Cal.App.4th 943, 947

[16 Cal.Rptr.2d 688] [preconception contract binds child]; *Bolanos* v. *Khalatian* (1991) 231 Cal.App.3d 1586, 1591 [283 Cal.Rptr. 209] [infant claiming in utero injuries]; *Wilson* v. *Kaiser Foundation Hospitals* (1983) 141 Cal.App.3d 891, 896-900 [190 Cal.Rptr. 649].) A spouse must arbitrate a wrongful death claim when his or her decedent spouse applied for health insurance for both of them and the application contained an arbitration clause. (*Hawkins* v. *Superior Court* (1979) 89 Cal.App.3d 413, 416-419 [152 Cal.Rptr. 491].) The wrongful death claims of nonsignatory adult heirs of a group health plan member must be arbitrated if the member agreed to arbitrate his or her heirs' claims. (*Herbert* v. *Superior Court* (1985) 169 Cal.App.3d 718, 722-727 [215 Cal.Rptr. 477].) When an unmarried pregnant woman signs an arbitration agreement with her physician, the child's father must also arbitrate a medical malpractice cause of action related to the child's birth. (*Michaelis* v. *Schori* (1993) 20 Cal.App.4th 133, 139 [24 Cal.Rptr.2d 380] [stillbirth]; *Bolanos* v. *Khalatian, supra*, at p. 1591 [injury during delivery].)

In some circumstances, a person who has authority to contract for medical services on behalf of another may, in the exercise of that authority, bind that person to an agreement to arbitrate his or her medical malpractice claims. (*Baker* v. *Birnbaum* (1988) 202 Cal.App.3d 288, 291 [248 Cal.Rptr. 336]; see *Gross* v. *Recabaren, supra*, 206 Cal.App.3d at pp. 779-780.) Employees who did not agree to arbitrate claims must do so when an employer acting on their behalf enters into a medical services contract containing an arbitration clause. (*Madden* v. *Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 702-709 [131 Cal.Rptr. 882, 552 P.2d 1178] [statutes granted state employers implied authority to contract for medical plan on employees' behalf]; *Harris* v. *Superior Court* (1986) 188 Cal.App.3d 475, 477 [233 Cal.Rptr. 186] [plaintiff asserts right to arbitrate].) Likewise, the general partner of a limited partnership is bound by the arbitration agreement entered into by the partnership and a third party. (*Keller Construction Co.* v. *Kashani* (1990) 220 Cal.App.3d 222, 225-229 [269 Cal.Rptr. 259].)

■ The present case is different from any other California case that has been cited by the parties. All nonsignatory arbitration cases are grounded in the authority of the signatory to contract for medical services on behalf of the nonsignatory—to bind the nonsignatory in some manner. In the instant case, there is no preexisting relationship between the cross-complainants and either Bonanno or Kaiser that could support any implied authority for Bonanno or Kaiser to bind any of the cross-complainants by their arbitration agreement.

## C. Cross-claims as Derivative

Seizing upon language in *Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100 [32 Cal.Rptr.2d 263, 876 P.2d 1062], Kaiser argues that cross-complainants' claims are purely "derivative" or "parasitic" of Bonanno's claim against it and that therefore the cross-complainants' indemnity claims must be subject to the arbitration agreement between Kaiser and Bonanno. *Western Steamship Lines, Inc., supra,* at pages 114-115, describes the nature of the relationship between the claim of the injured party and the claims between concurrent tortfeasors. That case involved an indemnity action between a cruise ship line and on-shore medical personnel arising from the death of a crewmember taken ill at sea. (*Id.* at pp. 104-105.) Reaffirming that for purposes of substantive law the indemnitee is "subject to whatever immunities or other limitations on liability would otherwise be available," the Supreme Court concluded that the statutory limitation of $250,000 in noneconomic damages contained in the MICRA (Civ. Code, § 3333.2) limited the amount of indemnification available to the cruise line from the health care providers.

*Western Steamship Lines, Inc.,* also notes, however, that "for certain procedural purposes, such as *statutes of limitations,* an indemnity claim is an independent action. [Citation.]" (*Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital, supra,* 8 Cal.4th at pp. 114-115.) Kaiser, in effect, argues that in this instance its arbitration clause, like the MICRA limitation, is a matter of substantive law rather than of procedure and therefore should bind the cross-complainants. We cannot agree. The fact that Bonanno and Kaiser agreed to resolve their disputes by means of arbitration is more nearly akin to a procedural matter than it is to a substantive one with respect to the indemnity claim as between the cross-complainants.

## D. Requirement of Agreement to Arbitrate

As Kaiser was unable to show any preexisting relationship, the trial court correctly determined that this is a straightforward contract case. ■ Public policy favors arbitration as an expedient and economical method of resolving disputes, thus relieving crowded civil courts. However, arbitration assumes that the parties have elected to use it as an alternative to the judicial process. (*Baker* v. *Birnbaum, supra,* 202 Cal.App.3d at p. 291.) Arbitration is consensual in nature. The fundamental assumption of arbitration is that it may be invoked as an alternative to the settlement of disputes by means other than the judicial process solely because all parties have chosen to

arbitrate them. (*Wheeler* v. *St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 355 [133 Cal.Rptr. 775]; see *Beynon* v. *Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 704 [161 Cal.Rptr. 146].) Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement. "The right to arbitration depends on a contract." (*Rhodes* v. *California Hospital Medical Center* (1978) 76 Cal.App.3d 606, 609 [143 Cal.Rptr. 59]; see *Baker* v. *Birnbaum, supra,* at pp. 291-292; *Hawkins* v. *Superior Court, supra,* 89 Cal.App.3d at pp. 416-417; see also *Freeman* v. *State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341] [California has no policy of compelling persons to accept arbitration of controversies that they have not agreed to arbitrate or which no statute has made arbitrable].) A party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration. (*Baker* v. *Birnbaum, supra,* at p. 291.) A party can be compelled to arbitration only when he or she has agreed in writing to do so. (*Marsch* v. *Williams* (1994) 23 Cal.App.4th 250, 255 [28 Cal.Rptr.2d 398]; *Boys Club of San Fernando Valley, Inc.* v. *Fidelity & Deposit Co.* (1992) 6 Cal.App.4th 1266, 1271 [8 Cal.Rptr.2d 587].) In essence, an action to compel arbitration is a suit in equity to compel specific performance of that contract. (*Ramirez* v. *Superior Court* (1980) 103 Cal.App.3d 746, 751 [163 Cal.Rptr. 223].) Absent a written agreement—or a preexisting relationship or authority to contract for another that might substitute for an arbitration agreement—courts sitting in equity may not compel third party nonsignatories to arbitrate their disputes.

We are aware that other appellate courts read the underlying contracts more broadly, finding that a medical malpractice arbitration clause applies to any claim arising out of the contracted-for services, regardless of whether they are asserted by the patient or a third party. (See *Bolanos* v. *Khalatian, supra,* 231 Cal.App.3d at p. 1591; *Gross* v. *Recabaren, supra,* 206 Cal.App.3d at p. 781 [loss of consortium].) ██ However, these cases, in our view, ignore the constitutional and procedural rights of the nonsignatory third parties who had no prior connection to a signatory party to the arbitration agreement. (See *Rhodes* v. *California Hospital Medical Center, supra,* 76 Cal.App.3d at pp. 609-610.)

In addition, policy considerations that prompted other appellate courts to compel nonsignatories to arbitration are not present in our case. First, unlike loss of consortium cases, there is no judicially declared preference for joining direct negligence claims with related indemnity claims. (See *Gross* v. *Recabaren, supra,* 206 Cal.App.3d at p. 781.) A cause of action for equitable

indemnity does not even accrue for statute of limitations purposes until the party seeking indemnity has suffered an actual loss by being compelled to pay damages. (*People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744, 755-757 [163 Cal.Rptr. 585, 608 P.2d 673]; *Christian* v. *County of Los Angeles* (1986) 176 Cal.App.3d 466, 471-472 [222 Cal.Rptr. 76]; *Card Constr. Co.* v. *Ledbetter* (1971) 16 Cal.App.3d 472, 480 [94 Cal.Rptr. 570].) Second, as the cross-complainants have no preexisting relationship with Bonanno or Kaiser, there is no risk that they might interfere with the patient-physician relationship or with Bonanno's privacy rights. (See *Gross* v. *Recabaren, supra,* at p. 781.) Third, the cross-complainants were not third party beneficiaries of the arbitration agreement who by benefitting from the agreement should also be bound by it. (See *Harris* v. *Superior Court, supra,* 188 Cal.App.3d at p. 478.) For all these reasons, we conclude that the trial court properly concluded that the cross-complainants were not required to arbitrate their cross-claims and thus properly denied Kaiser's motion to compel arbitration.

## IV.  MICRA

Kaiser also contends that if the comparative indemnity claims are not subject to arbitration, its arbitration bargain and the public policy of MICRA will be defeated. It argues that the trial court's decision effectively nullifies its arbitration rights. Finally, Kaiser argues that the trial court's decision undermines MICRA's policy requiring unqualified enforcement of health care provider arbitration agreements.

Section 1295 is part of MICRA. (See *Gross* v. *Recabaren, supra,* 206 Cal.App.3d at pp. 775-776.) The purpose of that statute is to encourage and facilitate the arbitration of medical malpractice claims by specifying uniform language to be used in binding arbitration agreements, so that the patient knows what he or she is signing and knows its ramifications. (*Id.* at p. 776.) However, if there is no arbitration agreement binding the cross-complainants whom Kaiser would compel to arbitrate, we fail to see how MICRA comes into play. The only agreement that falls within the provisions of MICRA is the one between Bonanno and Kaiser. Pursuant to the terms of that agreement, Kaiser got the benefit of its bargain with Bonanno, as its motion to compel her into arbitration was granted by the trial court. The agreement—and MICRA—require nothing more because Kaiser had no agreement with the cross-complainants nor did the cross-complainants have any preexisting relationship with either Bonanno or Kaiser. Thus, as this case falls outside MICRA, the policy considerations behind this statute have no bearing on this case.

## V.  CONCLUSION

The trial court's order is affirmed.

Anderson, P. J., and Poché, J., concurred.

On August 1, 1996, the opinion was modified to read as printed above.