Filed 7/3/24  Olavarria v. Fluence Corp. CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RAUL OLAVARRIA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>FLUENCE CORPORATION, LLC,<br><br>    Defendant and Respondent. | G063105<br><br>(Super. Ct. No. 30-2023-01312896)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Shirley Man Leung, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Buus Law Group and William L. Buus for Plaintiff and Appellant.

Nixon Peabody and Joshua J. Pollack for Defendant and Respondent.

\*        \*        \*

Plaintiff Raul Olavarría entered into an agreement (the agreement) with two subsidiaries of defendant Fluence Corporation, LLC (Fluence Corp.). Fluence Corp. was not a party to the agreement. Olavarría later filed contract-based claims in arbitration against Fluence Corp. and the two subsidiaries based on an arbitration clause in the agreement. From the start, Fluence Corp. objected to its inclusion in the arbitration on grounds it was not a party to the agreement, and it filed a motion to dismiss on this ground. The arbitrator declined to rule on the motion and requested that Olavarría file a petition in the superior court to compel Fluence Corp. to arbitration. Olavarría filed the petition, and the court denied it.

Olavarría appeals the denial of his petition to compel arbitration. He argues Fluence Corp. must participate in the arbitration because it (1) is a third party beneficiary to the agreement and (2) consented to arbitration by its conduct. We disagree. First, nothing in the arbitration provision shows it was intended to directly benefit Fluence Corp. Second, Fluence Corp. consistently objected to its inclusion in the arbitration proceedings and did not engage in any inconsistent conduct. As such, we affirm the trial court's order.

I

FACTS AND PROCEDURAL HISTORY

A. *The Agreement*

Olavarría cofounded GCM Peru Ltd. (GCM Peru) with Jorge Távara. GCM Peru obtained permits to construct and operate two saltwater desalination plants in Peru. GCM Peru, Olavarría, and Távara later entered into a Share Purchase Agreement (defined above as the agreement) with FLC Generate GCM S.A. de CV (FLC Generate) and FLC Boot Finance, LLC (FLC

2

Boot).[1]  In the agreement, Olavarría and Távara agreed to sell their stock in GCM Peru to FLC Generate and FLC Boot.

The agreement has an arbitration clause (the arbitration clause) that states, "Any dispute, controversy or claim arising from or relating to this Agreement or the breach, validity thereof . . . shall, upon the written request . . . of any Party to this Agreement, be finally and exclusively settled by *de jure* arbitration . . . ."  The agreement requires arbitration to occur in Orange County under the rules of the American Arbitration Association (AAA).

Fluence Corp. is not a party to the agreement.  Rather, it is the parent company of two of the parties to the agreement.  FLC Generate and FLC Boot are wholly owned subsidiaries of Fluence Corp. that were formed to acquire and develop water projects.  Fluence Corp. is mentioned once in the agreement.  In section 7.7, which is titled, "Compliance with Laws," GCM Peru acknowledged Fluence Corp. "is incorporated in Delaware, USA, and is a wholly owned subsidiary of Fluence Corporation Limited, which is a publicly traded company in Australia, and agree[d] to abide at all times by applicable Laws of the United States of America, Australia and Peru . . . ."[2]

---

[1] GCM Peru is a Peruvian entity, FLC Generate is a Mexican company, and FLC Boot is a Delaware limited liability company.

[2]  Fluence Corp. is arguably mentioned a second time in the agreement. Section 7.13, which specifies how notices to the parties will be delivered, states that GCM Peru shall receive notices "c/o Fluence Corporation."  It is unclear whether this refers to Fluence Corp. or its parent company, Fluence Corporation Limited.

*B. The Arbitration*

In June 2021, Olavarría filed an arbitration demand with AAA asserting contract-based claims against Fluence Corp., FLC Generate, and FLC Boot (collectively, Fluence defendants). Fluence defendants, who were represented by the same counsel, filed a joint response in August 2021. In that response, Fluence Corp. objected to its inclusion in the arbitration proceedings on jurisdictional grounds: "[Fluence Corp.] is not a party to the [agreement], which contains the arbitration clause that is the basis for this proceeding. As such there is no jurisdiction over Fluence Corp and the matter should be dismissed as to Fluence Corp on that basis. Fluence Corp will raise this issue with the arbitral tribunal as soon as it is constituted, so that the panel can rule on the issue as a preliminary matter, in accordance with AAA Rules." FLC Generate and FLC Boot did not contest jurisdiction.

Counsel for Fluence defendants later sent a letter to the arbitrator requesting permission to file a motion for early disposition. In this letter, Fluence Corp. again argued it was not a party to the agreement and was not subject to arbitration. The arbitrator granted Fluence defendants' request to file a motion for early disposition.

Olavarría filed a first amended demand for arbitration. In response, Fluence defendants moved for summary disposition and dismissal of the entire first amended demand. FLC Boot and FLC Generate made various arguments attacking the merits of Olavarría's claims. Fluence Corp., however, sought dismissal on grounds it was not subject to the arbitrator's jurisdiction because (1) it was neither a party to the agreement nor a third party beneficiary, and (2) Olavarría had not sufficiently alleged it was an alter ego of FLC Boot or FLC Generate. Fluence Corp. also asserted that only a court, not the arbitrator, could determine whether it was a party to the

4

agreement. Thus, Olavarría needed to obtain a court order to compel it into arbitration.

Following briefing, the arbitrator found Fluence Corp. "is not a party to the [agreement]. Contrary to [Olavarría's] contention, nothing in Section 7.7 of the [agreement] clearly makes Fluence Corp. a party to the [agreement] or the . . . arbitration clause. [Olavarría] has alleged that Fluence Corp. is a third party beneficiary of the [agreement] but has not adduced evidence on this point relying only on a vague unsupported and very general allegation." But the arbitrator granted Olavarría leave to amend.

Olavarría then filed a second amended demand for arbitration, and Fluence defendants again moved for dismissal (the second motion to dismiss). Fluence Corp. repeated the jurisdictional arguments from its prior motion to dismiss. It also reiterated that only the court could determine whether it was a party to the agreement. Rather than decide the second motion to dismiss, the arbitrator requested that Olavarría file a petition in the superior court to compel Fluence Corp. to arbitrate this dispute. The arbitrator refused to rule on the second motion to dismiss until the court decided the petition to compel arbitration.

## C. *The Trial Court*

As requested by the arbitrator, Olavarría petitioned the superior court for an order compelling Fluence Corp. to arbitration. First, he argued Fluence Corp. was a third party beneficiary of the agreement. Second, he asserted Fluence Corp. had consented to arbitration by participating in the arbitration proceedings.

The trial court denied the petition. It found Fluence Corp. was not a third party beneficiary because Olavarría had failed to show the

5

agreement was intended to benefit Fluence Corp. directly. It also held Fluence Corp. had not consented to arbitration. It explained, Fluence Corp. "has at each stage asserted its position that it is not subject to arbitration because it did not sign the [agreement]. Its subsidiaries, who do not dispute there [*sic*] are subject to arbitration, have asserted substantive arguments in the parties' joint briefs. [Fluence Corp.'s] limited participation in procedural matters – presaged with its objection and followed by its motion to dismiss for lack of jurisdiction – cannot be interpreted as consent to arbitration."

Olavarría appeals the trial court's order. As below, he claims Fluence Corp. is a third party beneficiary to the agreement and also consented to the arbitration through its participation. We find no error in the court's order.

II

DISCUSSION

*A. Applicable Law*

Generally, there is a strong public policy in favor of arbitration, and "'[d]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.'" (*Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 738.) "However, arbitration assumes that the parties have elected to use it as an alternative to the judicial process. . . . Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement . . . . A party cannot be compelled to arbitrate a dispute that it has not elected to submit to arbitration." (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 244-245.)

6

Only a court can determine whether a nonparty to an arbitration agreement can be compelled to arbitration. (*Benaroya v. Willis* (2018) 23 Cal.App.5th 462, 473.) "An 'order denying a petition to compel arbitration . . . is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent.'" (*Fisher v. MoneyGram Internat., Inc.* (2021) 66 Cal.App.5th 1084, 1094.) If the court's order is based on a decision of fact, we review it under the substantial evidence standard. If it rests on a decision of law, then our review is de novo. (*Ibid.*) At various points, the parties dispute which of these standards apply. We do not address these disputes because our conclusions would be the same under either standard.

## B. Third Party Beneficiary

Generally, a parent company is not bound by an arbitration agreement "signed by its subsidiary 'simply because it is a wholly owned subsidiary.' [Citations.] 'Some other basis of liability must be established.'" (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 861-862.) For example, a nonsignatory may be compelled to arbitration if it is a third party beneficiary to the arbitration agreement. (*Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.* (2019) 44 Cal.App.5th 834, 841; *Fuentes v. TMCSF, Inc.* (2018) 26 Cal.App.5th 541, 547 (*Fuentes*).)

In its third party beneficiary analysis, the trial court applied a three-part test developed by our Supreme Court. This test asks, "(1) whether the third party would in fact benefit from the contract, . . . (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives

7

of the contract and the reasonable expectations of the contracting parties.  All three elements must be satisfied to permit the third party action to go forward."  (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830 (*Goonewardene*).)

Olavarría did not address the elements of the *Goonewardene* test in his opening brief.  After Fluence Corp. requested that we affirm the court's order based on this omission, Olavarría tersely asserted in his reply brief that this test does not apply here.  He argued *Goonewardene* involved a nonsignatory seeking to enforce a contract as a third party beneficiary against a signatory, while this case involves the converse:  a signatory attempting to enforce the contract against a nonsignatory.  But Olavarría does not cite any authority showing that different tests apply in these two scenarios.  Nor does anything in *Goonewardene* state its test does not apply to scenarios in which a signatory attempts to enforce a contract against a nonsignatory.  While the phrasing of the third element of the *Goonewardene* test is tailored to enforcement of a contract by a third party, its substance can apply to all third party beneficiary cases.  It can be read to ask whether allowing an action by or against a purported third party is "'consistent with the objectives of the contract and the reasonable expectations of the contracting parties.'"  (See *Goonewardene, supra*, 6 Cal.5th at p. 830.)

We do not need to rule on whether the *Goonewardene* test applies in all cases in which a signatory attempts to enforce a contract against a third party.  As set forth above, we presume the trial court's order was right and Olavarría has the burden of showing error.  Due to his failure to provide meaningful argument with citations to legal authority, Olavarría has failed to meet his burden of showing *Goonewardene* is inapplicable.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 [Appellant must support claims

"with meaningful argument and citation to authority. . . .  We are not required to examine undeveloped claims or to supply arguments for the litigants"].)  Thus, to prevail in this argument, Olavarría must establish all the elements of the *Goonewardene* test.

Before continuing, we also note that case law suggests the same legal standard applies regardless of whether a nonsignatory is attempting to enforce a contract or is resisting the enforcement of a contract against it.  The idea is rooted in mutuality:  If a nonsignatory could not enforce the agreement against either of the contracting parties, then a contracting party cannot enforce it against the nonsignatory.  For instance, in *Matthau v. Superior Court* (2007) 151 Cal.App.4th 593, a signatory to an arbitration agreement was attempting to enforce the agreement against a nonsignatory (as is the case here).  (*Id*. at pp. 598, 602.)  In analyzing whether the agreement could be *enforced against the nonsignatory*, the court explained that "[a] third party beneficiary is someone *who may enforce a contract* because the contract is made expressly for his benefit."  (*Id*. at p. 602, italics added.)  The court held the nonsignatory was "not a third party beneficiary that could have enforced" the arbitration agreement against the signatory.  (*Ibid*.)  "Conversely, there [was] no basis for enforcing [the arbitration agreement]" against the nonsignatory.  (*Ibid*.)  Other cases have employed similar analysis.  (See, e.g., *Pillar Project AG v. Payward Ventures, Inc.* (2021) 64 Cal.App.5th 671, 677; *Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 298-299, 301.)

Olavarría contends that even if the *Goonewardene* test applies, he has met the first and second elements.  Even if we ignore the third element, which Olavarría claims is inapplicable, we disagree.  To meet the first element, the alleged third party beneficiary must directly benefit from

9

the agreement. The benefit cannot be remote or incidental. (*Levy v. Only Cremations for Pets, Inc.* (2020) 57 Cal.App.5th 203, 212-213.) Olavarría has not shown Fluence Corp. directly benefited from the arbitration clause.

In *Ngo v. BMW of North America, LLC* (9th Cir. 2022) 23 F.4th 942 (*Ngo*), the plaintiff purchased a car from a dealership. The purchase agreement contained an arbitration clause. The plaintiff later sued the car's manufacturer, who was not a party to the purchase agreement. The manufacturer claimed it was a third party beneficiary of the purchase agreement and sought to compel arbitration of the dispute. (*Id.* at pp. 944-945.)

The Ninth Circuit found the manufacturer did not meet the first element of the *Goonewardene* test because it had not directly benefitted from the arbitration clause. (*Ngo v. BMW of North America, LLC, supra*, 23 F.4th at p. 946.) It observed the arbitration clause stated that only "three parties — [the plaintiff] the dealership, and the assignee — may compel arbitration." (*Ibid*.) "The clause is pellucid that only three parties may compel arbitration, none of which [was the manufacturer]. Language limiting the right to compel arbitration to a specific buyer and a specific dealership (and its assignees) means that extraneous third parties may not compel arbitration. . . . Any benefit that [the manufacturer] might receive from the [arbitration] clause is peripheral and indirect because it is predicated on the decisions of others to arbitrate." (*Id.* at p. 947.)

Similarly, in *Fuentes*, the plaintiff purchased a motorcycle from a dealership and concurrently entered into a separate financing agreement with a lender. The purchase agreement with the dealership did not have an arbitration provision, but the financing agreement did. (*Fuentes, supra,* 26 Cal.App.5th at p. 545.) The plaintiff later filed a class action lawsuit against

10

the dealership. (*Id*. at p. 546.) The dealership claimed it was a third party beneficiary to the financing agreement and sought to compel the plaintiff's claims to arbitration. (*Id*. at pp. 546-547, 551.)

The court denied the petition to compel. It explained, "'To invoke the third party beneficiary exception, [a third party beneficiary] ha[s] to show that the *arbitration clause* . . . was "made expressly for [its] benefit."'" *Fuentes*, *supra*, 26 Cal.App.5th at p. 552.) Even assuming the dealership was a third party beneficiary to the loan proceeds from the financing agreement, the court found it had not shown it was a beneficiary of the arbitration clause. The arbitration clause identified the specific parties it was intended to benefit, which did not include the dealership. (*Ibid*.)

Here, the arbitration clause provides that "[a]ny dispute, controversy or claim arising from or relating to this Agreement or the breach, validity thereof . . . shall, upon the written request . . . of any *Party* to this Agreement, be finally and exclusively settled by *de jure* arbitration . . . ." (First italics added.) Likewise, it states the arbitrator's "award shall be final and binding upon *the Parties* as from the date rendered, and shall be the sole and exclusive remedy between *the Parties* regarding any claims . . . presented to the arbitral tribunal." (Italics added.)

The terms of the arbitration clause evince an intent to benefit the parties to the agreement, which did not include Fluence Corp. Rather, the agreement defined "Parties" as GCM Peru, Olavarría, Távara, FLC Generate, and FLC Boot. As in *Ngo* and *Fuentes*, these are the parties the arbitration clause was intended to directly benefit. Any benefit of the arbitration clause to Fluence Corp. was incidental. (*Fuentes*, *supra*, 26 Cal.App.5th at p. 552; *Ngo*, *supra*, 23 F.4th at pp. 946-947.)

11

In response, Olavarría claims section 7.7 of the agreement and the circumstances surrounding the formation of the agreement show the agreement was intended to benefit Fluence Corp. As to section 7.7, nothing in its language shows any intent for the arbitration clause to benefit Fluence Corp. Section 7.7 only reflects GCM Peru's agreement to follow American laws due to Fluence Corp.'s status as a Delaware limited liability company. As to the circumstances surrounding the agreement (e.g., the negotiations and statements made by Fluence Corp.'s parent company), even if we agreed these could be considered (which the parties dispute), Olavarría's examples show, at most, an intent for Fluence Corp. to benefit from the agreement generally. They do not show the *arbitration clause* was intended to benefit Fluence Corp. (See *Fuentes*, *supra*, 26 Cal.App.5th at p. 552; *Ngo*, *supra*, 23 F.4th at pp. 946-947.)

Finally, at the end of his third party beneficiary argument, Olavarría makes a conclusory assertion that equitable estoppel also applies. (See *Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.*, *supra*, 44 Cal.App.5th at p. 841 ["[A] nonsignatory "'is estopped from avoiding arbitration if it knowingly seeks the benefits of the contract containing the arbitration clause'""].) We do not address this argument for two reasons. First, Olavarría did not make this argument in the trial court, and he has not explained why we should consider this new theory on appeal. (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344.) Second, the argument is undeveloped. (*Allen v. City of Sacramento*, *supra*, 234 Cal.App.4th at p. 52.)

12

## C. Consent to Arbitration

"[O]ne who voluntarily joins an arbitration becomes a party to it." (*Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 859 (*Lovret*).)[3] A nonsignatory to an arbitration agreement "may lose his right to a determination of whether he is a party to an arbitration" if he participates in the arbitration proceeding. (*Ibid*.) This "rule exists to avoid the waste of scarce dispute resolution resources, and to thwart game-playing litigants who would conceal an ace up their sleeves for use in the event of an adverse outcome." (*Cummings v. Future Nissan*, *supra*, 128 Cal.App.4th at p. 328.)

"Whether a party's conduct constitutes consent is necessarily fact specific . . . ." (*Douglass v. Serenivision, Inc.*, *supra*, 20 Cal.App.5th at p. 388.) "On the one hand, consent to arbitration . . . will not be inferred solely from a party's conduct of appearing in the arbitral forum to object to the arbitrator's exercise of jurisdiction, at least if the party makes that objection 'prior to participat[ing]' in the arbitration. [Citations.] On the other hand, consent to arbitration . . . will be inferred from a party's conduct of litigating an issue up to the point of submitting it for decision in the arbitral forum, at least if the party does so without objection." (*Id*. at pp. 387-388.)

In *Grubb & Ellis*, a contractor entered into exclusive listing agreements with a real estate broker. The listing agreements had arbitration provisions that contained spaces for the parties to initial to indicate their assent or nonassent to the provision. The contractor initialed these

---

[3] Courts have used different labels for this theory, including consent, waiver, forfeiture, and estoppel. (See *Lovret v. Seyfarth*, *supra*, 22 Cal.App.3d at p. 859 [estoppel]; *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 387-388 [consent]; *Cummings v. Future Nissan* (2005) 128 Cal.App.4th 321, 328 [forfeiture]; *Grubb & Ellis Co. v. Bello* (1993) 19 Cal.App.4th 231, 236 [waiver] (*Grubb & Ellis*).)

provisions, but the broker did not. The broker later claimed the contractor had breached the listing agreements and demanded arbitration. (*Grub & Ellis*, *supra*, 19 Cal.App.4th at pp. 235-236.) The contractor appeared at the arbitration hearing and objected that there was no valid arbitration agreement due to the broker's failure to initial the relevant provisions. The arbitrator proceeded with the hearing over the objection. The contractor remained and participated in the proceedings. Following the hearing, the arbitrator issued an award in the broker's favor. (*Id.* at p. 236.)

The contractor asked the court to vacate the award because there was no valid arbitration agreement. In response, the broker asserted the contractor had consented to arbitration by appearing and participating in the arbitration hearing. (*Grubb & Ellis*, *supra*, 19 Cal.App.4th at p. 236.) The court disagreed. It explained, the contractor "appeared and made a proper objection on the ground there were no arbitration agreements without the assent of both parties to the arbitration provisions. . . . [The contractor's] specific objection was sufficient in the absence of later conduct by him inconsistent with this objection or an advisement by the court that participation would constitute a waiver of his objection. [¶] Although [the contractor] participated in the hearing, there is nothing in the record demonstrating the details of this participation. In particular, we have no facts before us demonstrating conduct inconsistent with [the contractor's] initial objection." (*Id.* at pp. 236-237.)

As in *Grubb & Ellis*, Fluence Corp. objected to its inclusion in the arbitration from the start, and it did not engage in any inconsistent conduct. Olavarría argues Fluence Corp. consented to arbitration by (1) stipulating to the application of California law and to reduce the number of required arbitrators from three to one; (2) agreeing on an arbitrator; (3) appearing at

14

various hearings; (4) seeking an order from the arbitrator that it was not a party to the agreement and not an alter ego of FLC Generate or FLC Boot; and (5) requesting attorney fees under the agreement. None of these examples are persuasive.

As to the first and second examples, we have not been cited any authority showing that participation in routine procedural matters after making a jurisdictional objection establishes consent to arbitration. Nor was this conduct inconsistent with Fluence Corp.'s initial jurisdictional objection. Fluence Corp.'s two subsidiaries—FLC Boot and FLC Generate—did not contest arbitration. The arbitration would have continued even if Fluence Corp. was deemed not to be a proper party. As such, we do not interpret Fluence Corp.'s decision to join these procedural stipulations as conduct inconsistent with its jurisdictional objections. Such conduct did not waste "scarce dispute resolution resources," nor was it "game-playing." (*Cummings v. Future Nissan*, *supra*, 128 Cal.App.4th at p. 328.)

As to the third and fourth examples, Fluence Corp.'s motions to dismiss based on lack of jurisdiction are fully consistent with its position that it was not a proper party to the arbitration. Fluence Corp. appeared at hearings to argue it was not subject to the arbitration proceedings.[4] Likewise, it argued that Olavarría needed a court order to compel it to

---

[4] Olavarría also asserts Fluence Corp. participated in a hearing regarding the applicable law to the dispute. However, the portion of the record he cites states, "[A]ll counsel participated" in this hearing. Since Fluence defendants shared the same counsel, it is unclear whether their counsel was participating in this hearing on behalf of all Fluence defendants or only FLC Boot and FLC Generate. Besides, as set forth above, given Fluence Corp.'s objection to its inclusion in the arbitration, its participation in routine procedural matters is insufficient to demonstrate consent to arbitration.

15

arbitration. These examples undercut, not assist, Olavarría's argument that Fluence Corp. consented to the arbitration.

Nor are we persuaded by Olavarría's argument that Fluence Corp. sought attorney fees under the agreement. This argument is based on the second motion to dismiss, which contained a request by "Respondents" for prevailing party fees under the agreement. The term "Respondents" was defined to include all Fluence defendants.

Fluence Corp. argues the fee request was only made by FLC Boot and FLC Generate. While the fee request was inartfully stated, we find Fluence Corp.'s argument persuasive considering the context of the fee request. In the second motion to dismiss, Fluence Corp. continually argued it was not a party to the agreement and not a third party beneficiary. For example, Fluence Corp. asserted that "the Arbitrator has already determined that Fluence Corp. is neither a party to the [agreement] nor a third-party beneficiary of the [agreement]. As such, the claims against Fluence Corp. must be dismissed." We do not think Fluence Corp. intended to suddenly reverse course and request attorney fees as a prevailing party under the agreement. Moreover, given that FLC Boot and FLC Generate are wholly owned subsidiaries of Fluence Corp., it is unclear how Fluence Corp. would have benefitted by including itself in the fee request rather than simply allowing its two subsidiaries to collect the fees. Thus, it appears the parties to the agreement, FLC Boot and FLC Generate, intended to request fees but the second motion to dismiss inadvertently used the term "Respondents" when making the request.

Olavarría also compares this case to *Lovret* and asserts that Fluence Corp. should have obtained a restraining order from the court to resist arbitration. (See *Lovret*, *supra*, 22 Cal.App.3d at p. 860.) *Lovret* is

16

easily distinguishable. "First, in *Lovret*, the waiving party raised no objection to her inclusion in the arbitration hearing. Second, in *Lovret*, the waiving party . . . not only participated in the arbitration hearing, but she also joined in the confirmation proceedings by filing cross-demands and causing workmen's and materialmen's liens on the property to be removed as a part of the judgment confirming the award. . . . Here, [Olavarría] failed to demonstrate specific conduct by [Fluence Corp.] inconsistent with [its] objection. Third, *Lovret* involved arbitration previously ordered by the court, and therefore a writ of prohibition or a restraining order would have been appropriate. However, [Fluence Corp.] was not ordered to arbitrate and therefore could not have obtained such relief." (*Grubb & Ellis*, *supra*, 19 Cal.App.4th at p. 237.)

Similarly, Olavarría contends Fluence Corp. should have completely refused to participate in the arbitration unless the court ordered it to do so. He cites a portion of *Grubb & Ellis* where the court noted the contractor had not been ordered to arbitration by a trial court. The court explained the contractor should have "'decline[d] or refuse[d] to participate in the arbitration proceedings,'" and forced the broker to compel arbitration. (*Grubb & Ellis*, *supra*, 19 Cal.App.4th at p. 237.) But since the contractor "represented himself at the arbitration hearing," the court "refuse[d] to read a waiver into his failure to 'decline or refuse to participate in the arbitration proceedings.' "'[A] mistake of law may be excusable when made by a layman but not when made by an attorney.'"" (*Id.* at pp. 237-238.)

This portion of *Grubb & Ellis* is inapposite. The contractor in *Grubb & Ellis* participated in a full arbitration hearing on the merits. The hearing decided the entire controversy and resulted in an award against the contractor. (*Grubb & Ellis*, *supra*, 19 Cal.App.4th at pp. 236-237.) Thus

17

*Grubb & Ellis* only shows that a court can infer a third party's consent to arbitration if it submits the case to the arbitrator on the merits. That did not happen here.

Finally, we are unpersuaded by Olavarría's analogy to personal jurisdiction. He has cited no authority showing consent to arbitration is governed by a similar standard as consent to personal jurisdiction. Instead, case law recognizes the two standards are markedly different. (See, e.g., *Douglass v. Serenivision, Inc., supra*, 20 Cal.App.5th at pp. 389-390.)

III

DISPOSITION

The court's order is affirmed. Fluence Corp. is entitled to its costs on appeal.

MOORE, ACTING P. J.

WE CONCUR:

MOTOIKE, J.

GOODING, J.