Filed 10/28/13

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| MARYLIN YOUNG, | H038736 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 112CV218720) |
| v. | |
| HORIZON WEST, INC., et al., | |
| Defendants and Appellants. | |


In this appeal, the owners and operators of a skilled nursing facility appeal from an order denying their motion to compel arbitration with their former patient, plaintiff and respondent Marylin Young. Appellants assert error in the trial court's determination that plaintiff's daughter, Bobbi Young,[1] lacked authority to sign an arbitration agreement on plaintiff's behalf. Appellants further contend that the agreement was not unconscionable and therefore should have been enforced. We agree with the trial court that Bobbi's execution of the arbitration agreement was unauthorized; accordingly, we must affirm the order on that ground alone.

---

[1] In this opinion plaintiff's daughter will be referred to as "Bobbi" and plaintiff's husband as "Robert" to make it clear which "Young" is indicated.

*Background*[2]

On September 16, 2010 plaintiff, who was then 88 years old, suffered a stroke. After a week's hospitalization, she was transferred to Monterey Pines Skilled Nursing Facility (Monterey Pines), where she remained for 10 days until her discharge on October 4, 2010. Plaintiff's complaint describes the following events: On September 29, 2010, about halfway through her stay at the facility, plaintiff told her daughter, Bobbi, that she needed to leave immediately. Though the stroke had impaired her ability to communicate, plaintiff managed to explain that "she had woken up in bed the previous night with her catheter removed and laying [*sic*] out next to her on her bed, causing the entire bed and her body to be wet. She heard male voices next to her bed and seeing [*sic*] the curtains around her bed moving. She also heard someone 'fiddling' with the nurse call button next to her bed." Plaintiff later told the police that when she woke up her gown was off, and an unknown male assistant was looking at her naked in bed. The assistant said to her, " 'This is why I love my job.' "

Bobbi discovered that the call button had been unplugged, making plaintiff's attempts to call a nurse fruitless. At about the same time, plaintiff developed "unexplained deep bruising on her inner thigh and pelvis region and began complaining of severe pain to her pelvis and upper thighs for the first time."

Bobbi arranged for plaintiff's removal from the facility, and the family brought her home. Plaintiff continued to have difficulty speaking and was not independently mobile, but "[o]nce [she] was able to be moved more frequently and more easily and to speak clearer [*sic*], she started complaining of extreme pain in her lower region, particularly her vaginal area, buttocks area, and her inner thighs." It turned out that plaintiff had

---

[2] Our summary of the procedural background of this case is necessarily derived from plaintiff's complaint, as the merits have not yet been determined by trial or other fact-finding proceeding.

contracted genital herpes. Robert, her husband of nearly 70 years, had been her only sexual partner, and he tested negative for the virus.

Plaintiff brought this action on February 15, 2012, naming Monterey Pines; its owners, Horizon West, Inc. and Horizon West Headquarters, Inc. (collectively, "Horizon West"); and a group of entities (the "Plum defendants") that had bought Monterey Pines in June 2011 and renamed the facility "Cypress Ridge Care Center." Plaintiff asserted four causes of action: elder abuse and neglect, negligence in the care of plaintiff, violation of plaintiff's rights under the Patients' Bill of Rights (Cal. Code of Regs., tit. 22, § 72527), and successor liability against the Plum defendants.

All of the first three causes of action were founded on the allegation that the staff at Monterey Pines had failed to provide a safe environment and protect her from sexual assault. She asserted that male residents were allowed to enter female residents' rooms, and call lights were either nonfunctioning or purposely disconnected by the staff. Plaintiff further described a longstanding pattern of "reckless neglect" of the facility's residents that had resulted in "numerous citations and deficiencies relating to the physical abuse of residents and other incidents of substandard care." Plaintiff also pointed to the failure of either Horizon West or the Plum defendants to investigate plaintiff's allegation of rape, which meant that other residents were at risk of being sexually assaulted and infected with an incurable sexually transmitted disease.

On April 9, 2012, plaintiff, by then 90 years old, moved for trial-setting preference under Code of Civil Procedure section 36, subdivision (a).[3] Both the Horizon and Plum defendants opposed the motion, arguing that (1) there was no evidence or even allegation

---

[3] Code of Civil Procedure section 36, subdivision (a), states: "A party to a civil action who is over 70 years of age may petition the court for a preference, which the court shall grant if the court makes both of the following findings: [¶] (1) The party has a substantial interest in the action as a whole. [¶] (2) The health of the party is such that a preference is necessary to prevent prejudicing the party's interest in the litigation."

of a medical condition requiring trial preference; (2) the case was not yet "at issue"; (3) plaintiff had not submitted a declaration attesting to proper service on all parties; and (4) there was "no competent evidence" that plaintiff was over 70 years of age.

Horizon and Monterey Pines, joined by the Plum defendants, then moved to stay the action and compel arbitration, citing Code of Civil Procedure sections 1281.2, 1281.4, and 1295. The motion was based on an agreement Bobbi had signed when plaintiff was admitted to Monterey Pines. Plaintiff opposed the motion, primarily on the grounds that (1) Bobbi had no authority to bind her mother to arbitration in signing the admission papers and (2) even if she did have such authority, the arbitration agreement was procedurally and substantively unconscionable.

After extensive briefing and oral argument, the trial court denied defendants' motion to compel arbitration and granted plaintiff's motion for preferential trial setting. Only Horizon and Monterey Pines (hereinafter appellants) filed a notice of appeal, limited to the order denying defendants' motion.

*Discussion*

The central issue before us is whether there existed a valid agreement entitling appellants to nonjudicial arbitration of plaintiff's claims. In denying defendants' motion the trial court reasoned that (1) compelling arbitration would be inconsistent with the Legislature's intent that litigants in plaintiff's circumstances receive trial preference; (2) Bobbi lacked authority, either actual or ostensible, to bind her mother to arbitration when she signed the admission papers containing the agreement; and (3) the circumstances surrounding execution of the arbitration agreement were "troubling."

Appellants argue that the court erred to the extent that it relied on the "possibility" of inconsistent decisions.[4] They also take issue with the court's consideration of trial

_____

[4] In a supplemental brief to the trial court, plaintiff had argued that the third cause of action for violating the Patients' Bill of Rights was not arbitrable (Code Civ. Proc.,

4

preference in its ruling. Neither of these points warrants this court's review. The court clearly discounted the significance of any inconsistency between trial on the nonarbitrable claim (the third cause of action for violating the Patients' Bill of Rights) and arbitration, as the result was dictated by the absence of Bobbi's authority to sign the agreement. The court's belief that granting defendants' motion would be inconsistent with plaintiff's entitlement to a grant of trial preference under section 36 is also of no value to this court, as we review the court's ruling, not its rationale. (Cf. *Davey v. Southern Pac. Co.* (1897) 116 Cal. 325, 329 ["a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason"].)

We therefore turn to the principal question of whether plaintiff was bound by the agreement her daughter signed on her behalf—specifically, whether Bobbi had the authority to represent plaintiff in agreeing to arbitration. This issue presents both factual questions — e.g., did plaintiff specifically authorize Bobbi to sign the agreement for her—and legal issues—e.g., did plaintiff's advanced health care directive confer such authority on her daughter. Only if Bobbi did have that authority do we consider the next question, whether the agreement itself was unconscionable.

Our review is governed by settled principles. To the extent that the lower court's order is based on a finding of material fact, we adopt a substantial evidence standard. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.) On the other hand, questions of law, including the legal effect of the undisputed contract language, is reviewed de novo. (*Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142; *Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892.)

---

§ 1430, subd. (b)); thus, she argued, a verdict after trial on this claim could be inconsistent with an arbitrator's decision, contrary to Code of Civil Procedure section 1281.2, subdivision (c).

5

"The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement." (*Flores v. Evergreen At San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 (*Flores*), citing *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) "Although California has a strong policy favoring arbitration [citations], our courts also recognize that the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived. [Citations.] Because the parties to an arbitration clause surrender this substantial right, the general policy favoring arbitration cannot replace an agreement to arbitrate." (*Marsch v. Williams* (1994) 23 Cal.App.4th 250, 254.) Courts therefore recognize that the right to arbitration depends on a contract. "Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement." (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 245; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990.) Nevertheless, "a person who is authorized to act as the patient's *agent* can bind the patient to an arbitration agreement." (*Flores, supra,* 148 Cal.App.4th at p. 587.)

Appellants' first theory regarding Bobbi's authority to bind plaintiff to arbitration is that she was plaintiff's agent, based on a power of attorney for health care (POA), which was part of plaintiff's advanced health care directive. The POA provided that when plaintiff's primary physician determined that she was unable to make her own health care decisions, her "agent" was authorized to make specified health care decisions for her. Appellants concede that plaintiff's physician never made this determination, but they maintain that the evidence supplied in her deposition established her complete incapacity and need for Bobbi's intervention. As the trial court recognized, however, such evidence does not substitute for satisfaction of the condition stated in the terms of plaintiff's advanced health care directive.

6

Probate Code section 4682 makes this clear: "Unless otherwise provided in a power of attorney for health care, the authority of an agent becomes effective only on a determination that the principal lacks capacity, and ceases to be effective on a determination that the principal has recovered capacity." On the POA form, plaintiff elected not to check the box allowing her "agent" to make health care decisions for her without a prior determination of incapacity by her physician. This important fact distinguishes the case before us from *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, on which appellants rely. In *Garrison*, the durable power of attorney signed by the decedent was "effective immediately" when she signed it. Here, plaintiff expressed her clear intention not to make the POA effective until her physician deemed her "unable to make [her] own health care decisions."

Similarly, appellants admit that Bobbi was not plaintiff's primary "health care agent" under the POA. Plaintiff's husband, Robert, assumed that role; Bobbi was to be the "first alternate agent" only if Robert was "not willing, able, or reasonably available to make a health care decision for [plaintiff]." Appellants argue that plaintiff's and Robert's deposition testimony supported the conclusion that Robert was "in poor health and recovering from a stroke," and therefore "not able or reasonable [*sic*] available to make health care decisions for Plaintiff." Appellants made this assertion to the trial court, which implicitly rejected their position on this factual issue and relied instead on the document's clear prerequisite to her agent's assumption of responsibility.[5] It was the province of the trial court as the trier of fact to weigh "all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.*, *supra*, 15

---

[5] Plaintiff offered evidence contradicting appellants' portrayal of Robert as incapable of making health care decisions for plaintiff. Bobbi testified that it was her father who made the decision at the hospital to administer immediate treatment to diminish the effects of the stroke.

Cal.4th at p. 972.)  Accordingly, our standard of review is " 'the same as for a judgment following oral testimony:  We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of credibility of the witnesses and the weight of the evidence.'  [Citation.]" (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653.)

Finally and most importantly, the POA contains no terms authorizing the patient's agent to make any decisions other than "health care decisions" for the patient.  Appellants strive to avoid the legal effect of this omission, again citing *Garrison v. Superior Court, supra,* 132 Cal.App.4th 253.  *Garrison*, however, is distinguishable for this reason as well.  There the durable power of attorney included "the power to sign '[a]ny necessary waiver or release from liability required by a hospital, or physician.' "  (*Id.* at p. 259.) The reviewing court did, however, express the view that the term "health care decisions" made by an agent encompasses the execution of arbitration agreements on behalf of the patient.  So broad an interpretation of "health care decisions" seems unnecessary to the result in *Garrison*, and to the extent that the court intended such a general application, we disagree with its conclusion.

Appellants further argue that even if Bobbi was not plaintiff's agent under the POA, plaintiff nonetheless expressly authorized her to act in that capacity.  The deposition evidence she supplies for this fact, however, was properly rejected by the trial court.  According to appellants, plaintiff testified that she had expressly authorized her daughter to "act and make decisions on her behalf."  What plaintiff actually stated, however, was that her daughter knew from conversations what her wishes were, "[t]o receive the care that was possible at the time."  The context presented to plaintiff at this time was Bobbi's understanding of plaintiff's wishes for *medical treatment* when plaintiff was hospitalized immediately after the stroke.  No mention was made of authorization to

8

sign any agreements other than for medical services, either at the hospital or later, at Monterey Pines.  Likewise immaterial is plaintiff's statement regarding her daughter's authority "to complete paperwork" on her behalf when she arrived at Monterey Pines.  When asked whether Bobbi had such authority, plaintiff said only, "As far as I know, she had permission to take care of details like that."  This testimony is a far cry from expressly authorizing her daughter to sign an agreement forgoing her right to a jury trial.  The trial court thus did not err in ruling that there was "no direct evidence of plaintiff's acquiescence."[6]

Weakest of all is appellants' assertion, repeated in their reply brief, that plaintiff's husband "confirmed" that their daughter was authorized to act on their behalf.  The testimony they offer is Robert's statement that Bobbi was their "legal guardian."  This characterization was nothing more than a legal conclusion unsupported by any facts, and it was indeed contradicted by all of the other evidence, including the terms of plaintiff's advanced health care directive.

Appellants next contend that plaintiff is bound by equitable estoppel.  Of the nine decisions they cite addressing this doctrine, none involves facts comparable to the case before us.  All apply the doctrine either to compel a *signatory* plaintiff to arbitrate with a nonsignatory *defendant* (e.g., *Boucher v. Alliance Title Company, Inc.* (2005) 127

---

[6] Appellants' suggestion that "it appears that the Court did not even consider" the testimony that their daughter had such authority is not well taken.  Unless the trier of fact acts arbitrarily, it may reject entirely the testimony of a plaintiff.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890.)  We may not reweigh the witness's credibility, and we must "accept as true all evidence and all reasonable inferences from the evidence tending to establish the correctness of the trial court's findings and decision, resolving every conflict in favor of the judgment."  (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)  Similarly unavailing is appellants' suggestion that plaintiff "could have easily" signed a declaration stating that she had *not* authorized her daughter to sign the arbitration agreement.  Such a document might have made plaintiff's opposition to the motion stronger, but it was unnecessary. It was appellants' burden to establish Bobbi's authority to sign the agreement, and they failed to do so on the evidence *they* supplied.

Cal.App.4th 262, 268; *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705, 1718; *Herbert v. Superior Court* (1985) 169 Cal.App.3d 718, 725), or to compel arbitration by the nonsignatory family members of a signatory patient (e.g., *Bolanos v. Khalatian* (1991) 231 Cal.App.3d 1586, 1591-1592 [child and spouse]; *Mormile v. Sinclair* (1994) 21 Cal.App.4th 1508, 1515 [spouse]; *Pietrelli v. Peacock* (1993) 13 Cal.App.4th 943, 946-947 [unborn child].)  None held an injured patient to an arbitration agreement signed *on her behalf* by a family member on an equitable theory that the family member was the patient's agent.

Nor does one isolated sentence from *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.* (2008) 158 Cal.App.4th 1061 help appellants.  The issue there was whether liability insurers who had settled an action could be compelled to arbitrate their equitable contribution claim against the nonsettling insurers.  Affirming the trial judge, the reviewing court held that they could not, because "equitable contribution arises not from contract but from equity." (*Id.* at p. 1068.)  The court next rejected the appellant insurers' argument that the respondent insurers could be compelled to arbitrate under the plaintiff's agreement with the appellant insurers.  The appellants had confused the doctrine of equitable contribution with equitable subrogation.  The former did not compel the respondent insurers to stand in the shoes of the plaintiff, who had signed the agreement with the appellant insurers.  The multiple insurers involved had individually contracted with their insureds, not with one another.  Thus, the respondent insurers could not be compelled to arbitrate under an agreement to which they were not a party.  Equitable estoppel based on a "preexisting relationship" was not a viable alternative, because (a) such a relationship did not exist; and (b) the respondent insurers were "not suing for direct benefits under the insurance contracts with [plaintiff] Crowley," but sought from "other *insurers* benefits [r]espondents have provided to Crowley."  (*Id.* at p. 1071.)  Clearly *Crowley* has no application to this case.  Plaintiff did not sue for a "direct benefit" under her contract with the nursing facility, but complained of noncontractual

10

injury received during her stay there.  And unlike the cases cited by appellants, the arbitration provision on which they rely never became effective in the first place.

"A valid claim for equitable estoppel requires: (a) a representation or concealment of material facts; (b) made with knowledge, actual or virtual, of the facts; (c) to a party ignorant, actually and permissibly, of the truth; (d) with the intention, actual or virtual, that the ignorant party act on it; and (e) that party was induced to act on it. [Citation.] There can be no estoppel if one of these elements is missing." (*Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 584; see also *Southern Cal. Edison Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 1086, 1110.)  In this case, the critical threshold element is missing:  Plaintiff did not represent or conceal any fact.  Equitable estoppel is not available to appellants in plaintiff's suit against them.

Appellants' next theory is that plaintiff's daughter had *ostensible* authority to bind plaintiff to arbitration.  Their entire argument on this point is that Bobbi herself, by signing the admission paperwork, represented that she was "designated, authorized or employed as Plaintiff's agent and that she intended for Plaintiff to be bound by the agreements.  Plaintiff's daughter allowed defendants to believe that she had the authority to act on Plaintiff's behalf."  But ostensible authority cannot be created merely by a purported agent's representation.  As appellants themselves recognize (without citing the applicable statute), "[a]n agency is ostensible when the *principal* intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300, italics added.)  "An agent has such authority as the principal, actually or ostensibly, confers upon him." (Civ. Code, § 2315.)  Ostensible authority "is such as a *principal*, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317, italics added.)

Several appellate decisions, most of them not mentioned in appellants' briefs, have confirmed these tenets.  In *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, a patient's adult children sued a skilled nursing facility as their mother's successors

11

in interest (as well as on their own behalf, for wrongful death). The superior court denied the facility's petition to compel arbitration and the appellate court affirmed. Merely signing arbitration agreements after their mother's admission did not give the plaintiffs authority to bind her to arbitration. Nor was there any evidence that their mother, who was "comatose and mentally incompetent," had done anything that "caused [the defendants] to believe [that] either of her daughters was authorized to act as her agent in any capacity." (*Id*. at p. 302.)

The court in *Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374 followed the lead of *Pagarigan*. There a rehabilitation facility unsuccessfully argued that the plaintiff's daughter was either actually or ostensibly authorized to agree to arbitration of plaintiff's negligence claims. It was not enough that the plaintiff "let" her daughter act for her by making medical decisions and arranging treatment for her. (*Id*. at p. 376.) The appellate court also found it significant that the daughter had signed the arbitration agreements as "responsible party" but left the line for "agent" blank. (*Id*. at pp. 376-377.)

*Flores*, *supra*, 148 Cal.App.4th 581 is the one relevant case appellants try to distinguish. They do not succeed. In that case Josephina Flores's husband, Luis, signed the arbitration agreements upon Josephina's admission to the defendant nursing facility. As was true for Bobbi in the case before us, there was no power of attorney in Luis at the time of his wife's admission. The appellate court rejected the facility's ostensible-authority argument -- i.e., that Luis "represented himself as his wife's agent, as shown by his conduct of signing all the admission papers on her behalf, and that Josephina 'allowed [Evergreen] to believe that [Luis] had the authority to act on her behalf.' " (*Id*. at p. 586.) The court agreed with the trial judge that this conduct was irrelevant, and that there was no evidence that Josephina herself, who was suffering from dementia and other ailments, had done anything to cause the facility to believe that Luis was her agent. (*Id*. at p. 588.)

Similar facts were presented in *Warfield v. Summerville Senior Living* (2007) 158 Cal.App.4th 443. There, too, the patient's husband signed an arbitration agreement after

12

she was admitted.  Following *Flores*, the appellate court rejected the facility's argument that the husband had ostensible authority to bind the plaintiff, because there was "absolutely no evidence of the wife's 'express or implied consent to have her husband act as her agent.' " (*Id*. at p. 448, quoting *Flores*, *supra*, 148 Cal.App.4th at p. 589.)  Also without merit was the facility's argument that the plaintiff, by having "never once voiced disagreement" with the living arrangement and services selected by her husband, acquiesced in her husband's representation as her agent.  Even if the facility had supplied evidence of this factual assertion, "the failure of a resident suffering from dementia to object to the living arrangements her husband had made would hardly constitute evidence that she had authorized him to act as her agent in waiving her right to a jury trial."  (*Ibid*.)  Because there was no evidence of her husband's agency in the *plaintiff's* conduct, ostensible authority had not been shown.

As in *Pagarigan*, *Flores*, *Goliger*, and *Warfield*, here appellants offer nothing to suggest that plaintiff acted in any way to cause the facility's admissions coordinator to believe that plaintiff's daughter was authorized to sign an arbitration agreement on plaintiff's behalf.  As the *Flores* court cogently explained, "an agency cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency. Agency 'can be established either by agreement between the agent and the principal, that is, a true agency [citation], or it can be founded on ostensible authority, that is, some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists, and a reasonable reliance thereon by such third persons.' [Citations.] ' " 'The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control.'. . ."  [Citations.]  Thus, the "formation of an agency relationship is a bilateral matter. Words or conduct by *both principal and agent* are

13

necessary to create the relationship. . . ." ' " (*Flores*, *supra*, 148 Cal.App.4th at pp. 587-88, quoting *Van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 571.)[7]

The trial court here was clearly not convinced that plaintiff did anything to permit an inference of ostensible authority. The admissions coordinator, Jacqueline Auker, stated in her declaration that it was her "custom and practice" to provide the arbitration agreement to the resident "and/or his legal representative/agent [and] answer any questions that he/she may have." In this situation, it would have been the purported representative, plaintiff's daughter, who could have articulated questions and expressed consent.[8] But even if we assume that Auker showed the agreement to the "resident" (i.e., plaintiff) on this occasion, there is no evidence of a response by *plaintiff* that permitted a reasonable belief that her daughter was authorized to sign an arbitration agreement as her agent. Likewise, in its role as trier of fact the superior court was entitled to reject as insufficient Auker's statement that "[b]ased on my custom and practice, I would have confirmed with Marylin Young that Bobbi Young had her permission to sign documents on the resident's behalf."

"A third person . . . is not compelled to deal with an agent, but if he does so, he must take the risk. He takes the risk not only of ascertaining whether the person with

---

[7] These principles are not, of course, confined to the setting of the nursing facility. In any application of either ostensible agency or ostensible authority, the validity of that relationship cannot be established solely by the representations or conduct of the purported agent; "there must be evidence of conduct by the principal which causes a third party reasonably to believe the agent has [such] authority." (*Lindsay-Field v. Friendly* (1995) 36 Cal.App.4th 1728, 1734; *J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 404; see also *Preis v. American Indemnity Co.* (1990) 220 Cal.App.3d 752, 761 ["Ostensible authority must be established through the acts or declarations of the principal and not the acts or declarations of the agent"], citing *People v. Surety Insurance Co.* (1982) 136 Cal.App.3d 556, 562.)

[8] Indeed, by appellants' own description, plaintiff was "unable to communicate, talk, or even see upon her admission to Defendants' facility." "Nobody could understand her."

14

whom he is dealing is the agent, but also of ascertaining the scope of his powers." (*Ernst v. Searle* (1933) 218 Cal. 233, 240; see also *Lindsay-Field v. Friendly, supra,* 36 Cal.App.4th at p. 1734 [absent showing of ostensible authority, those dealing with an assumed agent "are bound at their peril to ascertain the extent of the agent's authority"].) Even if there were sufficient evidence that Bobbi had actually represented that she was authorized to bind plaintiff to arbitration, appellants took the risk that she in fact had no such authority. Absent proof of agency either through direct evidence or through reliance on plaintiff's own conduct, appellants failed to demonstrate Bobbi's actual or ostensible authority to bind plaintiff.

Appellants reach far in their final attack on the trial court's findings regarding Bobbi's authority: The court used the wrong standard of proof. This assertion is based solely on two sentences in the trial court's order. First, the court stated, " . . . this court is not convinced that plaintiff's daughter had her authority to bind her to arbitration during admission to defendants' facility. It was clear that plaintiff could not commit herself to the agreement." Next, in discussing ostensible authority based on Auker's declaration, the court stated, "There is no direct evidence of plaintiff's acquiescence. This court is not convinced that plaintiff agreed to binding arbitration." By highlighting these statements appellants argue that the trial judge incorrectly imposed on them a "clear and convincing evidence" standard rather than making its findings by a preponderance of the evidence.

We are, to put it simply, unconvinced. Using the common word "convinced" in stating a factual finding is no more improper than a statement by our Supreme Court that juror unanimity in a theory of murder is unnecessary " 'as long as each juror is convinced beyond a reasonable doubt that defendant is guilty of murder . . . . ' [Citation.]" (*People v. Valdez* (2012) 55 Cal.4th 82, 153.)[9] If use of the word "convinced" were precluded in

---

[9] Indeed, criminal jury instructions freely use the word "convinced" without creating any apparent confusion. CALCRIM No. 376, for example, reminds the jury that it may not

15

articulating or following a standard lower than clear and convincing evidence, then the civil jury instruction routinely employed to define "preponderance of the evidence" would have been invalidated long ago.[10] Here the court could have said that it was "not convinced by a preponderance of the evidence," but such detail would have been unnecessary to convey the intended meaning and scope of the court's finding to any reasonable recipient of the ruling. In any event, there is nothing in the court's explanation of its ruling that even remotely indicates that it did not understand and apply the correct burden of proof.

We thus find no error in the trial court's determination that plaintiff's daughter lacked authority, either actual or ostensible, to bind plaintiff to arbitration with appellants. Because the arbitration agreement is of no effect for this reason, it is unnecessary to address plaintiff's additional challenge to the agreement as unconscionable, nor need we determine whether any of plaintiff's claims are beyond the reach of the agreement. (See *Neary v. Regents of University of California* (1992) 3

---

convict a criminal defendant of any crime "unless you are convinced that each fact essential to the conclusion that the defendant is guilty of that crime has been proved beyond a reasonable doubt." CALCRIM No. 224 also uses the term "convinced": "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt. [¶] Also, before you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant is guilty." CALCRIM No. 3519, pertaining to lesser offenses, tells the jury, "If all of you find that the defendant is not guilty of a greater charged crime, you may find (him/her) guilty of a lesser crime if you are convinced beyond a reasonable doubt that the defendant is guilty of that lesser crime. . . . " CALJIC instructions long in use before the adoption of CALCRIM also used the term "convinced" in explaining necessary jury findings under the "beyond a reasonable doubt" standard. (See CALJIC Nos. 8.87, 8.71, 8.72.)

[10] BAJI No. 2.60 defined "preponderance of the evidence" as "evidence that has more convincing force than that opposed to it."

Cal.4th 273, 284 ["The well-established rule is that we should avoid advisory opinions"];
cf. *Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 342.)

*Disposition*

The order denying appellants' motion is affirmed.

_____

ELIA, J

WE CONCUR:

_____

RUSHING, P.J.

_____

PREMO, J.

*Young v. Horizon West, Inc.*

H038736

Trial Court:                    Santa Clara County Superior Court


Trial Judge:                    Hon. Kevin E. McKenney



Attorneys for Defendants
  And Appellants:               Beach Whitman Cowdrey,
                                Thomas E. Beach and
                                Darryl C. Hottinger

Attorneys for Plaintiff
  And Respondent:               Needham Kepner & Fish,
                                Craig Needham and
                                Kirsten Fish

                                Smith & McGinty,
                                Daniel U. Smith and
                                Valerie T. McGinty

                                Stebner & Associates,
                                Kathryn Stebner and
                                Karman Ratliff



*Young v. Horizon West, Inc.*

H038736