Filed 5/18/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NANCY KINDER, | B316937 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV48685) |
| v. | |
| CAPISTRANO BEACH CARE CENTER, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Barbara M. Scheper, Judge.  Affirmed.

Peck Law Group, Steven C. Peck and Adam J. Peck for Plaintiff and Respondent.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Suzanne L. Schmidt, Kathleen M. Walker and Jeffrey S. Healey for Defendants and Appellants.

———————————

# INTRODUCTION

Nancy Kinder was a resident at a residential skilled nursing facility when she sustained injuries in a fall. She sued the facility, Capistrano Beach Care Center, LLC dba Capistrano Beach Care Center (CBCC), and its operator, Cambridge Healthcare Services, LLC (collectively, defendants). Defendants petitioned to compel arbitration, claiming Kinder was bound by arbitration agreements purportedly signed on her behalf by her adult children, Barbara Kinder (Barbara) and James Kinder (James). The trial court denied the petition, concluding defendants had failed to prove Barbara or James had actual or ostensible authority to execute the arbitration agreements on Kinder's behalf.

We affirm. CBCC did not meet its initial burden to make a prima facie showing that Kinder agreed to arbitrate by submitting arbitration agreements signed by Kinder's adult children. CBCC presented no evidence that Barbara or James had actual or ostensible authority to execute the arbitration agreement on Kinder's behalf, beyond their own representations in the agreements. A defendant cannot meet its burden to prove the signatory acted as the agent of a plaintiff by relying on representations of the purported agent alone.

# FACTUAL AND PROCEDURAL HISTORY

A.    *Allegations in the Complaint*

On September 21, 2020, Kinder was admitted to CBCC, a licensed skilled nursing facility providing long-term custodial care. Upon admission, Kinder was deemed to be at high risk for

falling, but CBCC repeatedly failed to take any precautions to prevent a fall.  On November 20, 2020 Kinder fractured her hip when she fell from an elevated bed that lacked guard rails.  She had surgery to repair the fracture.

On December 21, 2020, Kinder filed this action, asserting claims for elder abuse (Welf. & Inst. Code, § 15600 et seq.), violation of residents' rights (Health & Saf. Code, § 1430, subd. (b)), and negligence.

B.     *Defendants' Petition To Compel Arbitration and Trial Court's Denial*

On August 11, 2021, defendants filed a petition to compel arbitration, claiming Kinder was bound by arbitration agreements James and Barbara had purportedly executed on her behalf.  Defendants claimed James and Barbara acted as Kinder's agents in executing the agreements.  The sole evidence submitted by any party was a declaration of defendants' counsel, which stated:  "Attached hereto as Exhibits 'A,' 'B,' 'C,' and 'D' are true and correct copies of the Arbitration Agreements pertaining to NANCY KINDER, which my office obtained from my client who maintains said document in its ordinary course and scope of business."  The declaration attached four arbitration agreements, two of which purported to require the arbitration of medical malpractice claims and two of which purported to require the arbitration of claims other than medical malpractice.  All four agreements stated that, pursuant to Health and Safety Code section 1430, the resident did not waive her right to bring a court action for violations of the Patient's Bill of Rights contained in title 22 of the California Code of Regulations section 72527.

3

Each of the form agreements contained a signature block with blanks for the resident's name and signature; the resident's representative's name and signature; and the facility representative's name and signature. Kinder's name appears in the "Resident Name" field on each document, but the line for her signature is blank. In the representative's name and signature fields, Barbara's name and apparent signature appears in two of the documents, and James's name and apparent signature appears on the other two. The agreements that appear to bear Barbara's signatures are dated September 22, 2020; those appearing to bear James's signatures are dated November 30, 2020.

Directly above the signature block, each of the pre-printed forms includes the following language: "By virtue of Resident's consent, instruction and/or durable power of attorney, I hereby certify that I am authorized to act as Resident's agent in executing and delivering of [*sic*] this arbitration agreement."

Kinder did not sue for malpractice, so the relevant agreements are those for arbitration of claims other than malpractice. Those agreements state in relevant part: "The parties understand that, except as provided below, any claim other than a claim for medical malpractice, arising out of the provision of services by the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof, or which allege violations of the Elder Abuse and Dependent Adult Civil Protection Act, or the Unfair Competition Act, or which seek an award of punitive damages or attorneys' fees, will be determined by submission to neutral arbitration as provided by California law, and not by a lawsuit or court process."

Each agreement further provides: "By signing this arbitration agreement below, the Resident agrees to be bound by the foregoing arbitration provisions. The Resident acknowledges that he or she has the option of not signing this arbitration agreement and not being bound by the arbitration provisions contained herein. The execution of this arbitration agreement is not a precondition to receiving medical treatment or for admission to the Facility. This arbitration agreement may be rescinded by written notice from either party, including the Resident's Legal Representative and/or Agent, if any, and as appropriate, to the other party within thirty (30) days of signature."

The trial court denied defendants' petition to compel arbitration, concluding that defendants bore the burden of proving Barbara or James had actual or ostensible authority to bind Kinder to arbitration, and that defendants could not meet that burden by relying solely on the purported agents' own representations. The court stated: "Since there is no evidence of conduct by [Kinder] indicating that Barbara or James had authority to sign the agreement on her behalf, Defendants have failed to show the existence [of] an agency relationship. Defendants offer no other evidence outside of the Agreements that agency authority existed. Absent such authority, [Kinder] cannot be bound by the arbitration agreements presented."

Defendants' timely appeal followed.

## DISCUSSION

A. *Standard of Review*

"There is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration." (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317 (*Lopez*), quotation marks omitted.) "[I]f the court's denial rests solely on a decision of law, then a de novo standard of review is employed." (*Ibid.,* quotation marks omitted; accord, *Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744 (*Garcia*) ["We review de novo the legal conclusions underlying a trial court's denial of a petition to compel arbitration."].)

"If the court's order is based on a decision of fact, then we adopt a substantial evidence standard." (*Lopez, supra*, 39 Cal.App.5th at p. 317.) "Under that standard, when the trier of fact has expressly or implicitly concluded the party with the burden of proof did not carry the burden and that party appeals, . . . the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." (*Garcia, supra,* 58 Cal.App.5th at p. 744, quotation marks and ellipses omitted.)

Here, defendants' motion presents primarily a legal issue that we review de novo: whether, under the burden shifting framework in *Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164-166 (*Gamboa*), a defendant moving to compel arbitration meets its initial burden of proving the plaintiff

6

agreed to arbitrate solely by submitting an agreement signed by a third party who states in the agreement he or she has authority to sign on the plaintiff's behalf.

> B. *The Trial Court Correctly Ruled Defendants Failed To Prove Kinder Agreed To Arbitrate*

"'[T]he right to compel arbitration depends upon the existence of a valid agreement to arbitrate between the parties.'" (*Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263.) "'The question of whether a valid agreement to arbitrate exists is determined by reference to the law applicable to contracts generally.'" (*Ibid.*) "'The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement.'" (*Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1128 (*Young*).)

"'Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement.'" (*Young, supra*, 220 Cal.App.4th at p. 1128.) However, "'a person who is authorized to act as the [resident or] patient's agent can bind the [resident or] patient to an arbitration agreement.'" (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1074 (*Rogers*).)

"An agent is one who represents another, called the principal, in dealings with third persons. [Citation.] In California, an agency is either actual or ostensible. [Citation.] Actual agency arises when the principal's conduct causes the agent reasonably to believe that the principal consents to the agent's act on behalf of the principal. [Citations.] Ostensible agency arises when the principal's conduct causes the third party

7

reasonably to believe that the agent has the authority to act on the principal's behalf." (*Rogers, supra*, 75 Cal.App.5th at p. 1074, quotation marks omitted.)

"An agency, whether actual or ostensible, cannot be created by the conduct of the agent alone; rather, conduct by the principal is essential to create the agency. [Citations.] The principal must in some manner indicate that the agent is to act for the principal, and the agent must act or agree to act on the principal's behalf and subject to the principal's control. [Citations.] Thus, the formation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship." (*Rogers, supra,* 75 Cal.App.5th at p. 1074, quotation marks, ellipses, and brackets omitted.)

When a defendant contends an agreement to arbitrate is binding because it was signed by an agent of the plaintiff, the defendant bears the burden of proving the signatory was the plaintiff's actual or ostensible agent. (*Rogers, supra,* 75 Cal.App.5th at p. 1074.) A defendant "seeking to compel arbitration does not meet its burden of proving the existence of an arbitration agreement when it does not present any evidence that the purported principal's conduct caused the agent or the [defendant] to believe that the agent had the authority to bind the principal." (*Id.* at p. 1075.)[1] In particular, a defendant

---

[1] The *Rogers* court cites a long line of well-established authority for this proposition, including *Lopez, supra,* 39 Cal.App.5th at pp. 313, 319; *Valentine, supra,* 37 Cal.App.5th at pp. 1086-1088; *Hutcheson v. Eskaton FountainWood Lodge* (2017) 17 Cal.App.5th 937, 958; *Young, supra*, 220 Cal.App.4th at pp. 1132-1134; *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1173; *Flores v. Evergreen at San Diego,*

cannot meet its burden to prove the signatory acted as the agent of a plaintiff by relying on representations of the purported agent alone.  (See *Valentine v. Plum Healthcare, LLC* (2019) 37 Cal.App.5th 1076, 1087 (*Valentine*) ["'[o]stensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists'"]; *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 588 [actual agency cannot be established without evidence of the principal's conduct].)

Here, defendants presented no evidence that Kinder did anything to lead James and Barbara to believe they had the actual authority to enter into arbitration agreements on her behalf.  Similarly, defendants present no evidence that Kinder did anything to lead defendants to believe that James and Barbara had ostensible authority to do so.  Instead, defendants contend the court should have found James and Barbara were Kinder's actual or ostensible agents based on their purported certification in the arbitration agreement that they were "authorized to act as Resident's agent in executing and delivering of [sic] this arbitration agreement."  As noted, courts have consistently rejected this position in closely analogous contexts.  (See, e.g., *Valentine, supra,* 37 Cal.App.5th at p. 1087 [plaintiff's husband had signed the arbitration agreement on a line marked "resident's representative" beneath language stating that one's signature indicated the signor had the authority to enter into such an arbitration agreement on the patient's behalf; the evidence was not sufficient to establish agency and plaintiff was

---

*LLC, supra,* 148 Cal.App.4th at pp. 585, 588; *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301-303.

not bound]; *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301 [defendant did not prove actual or ostensible authority merely by presenting evidence that plaintiff's daughter signed the arbitration agreement and thereby implicitly represented she had authority; any such representation is "totally irrelevant" because "[a] person cannot become the agent of another merely by representing herself as such"]; see also *Flores v. Evergreen at San Diego, LLC*, *supra*, 148 Cal.App.4th at p. 589 [plaintiff is not bound by arbitration agreement signed by her husband; "[e]ven though [defendant] presented evidence showing that Luis acted as if he were Josephina's agent, the establishment of the agency also requires conduct on the part of Josephina conferring that status. It was [defendant's] burden to show the validity of the arbitration agreement based on Josephina's express or implied consent to have her husband act as her agent"].)

Defendants argue that they met their initial burden by submitting the arbitration agreements with their moving papers and that the burden shifted to Kinder to present evidence that Kinder did not authorize Barbara or James to enter into the agreement. Since Kinder presented no evidence with the opposition papers, defendants argue the court was required to find Kinder agreed to arbitrate the dispute.

Defendants rely on *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215 (*Condee*) and *Gamboa, supra,* 72 Cal.App.5th 158 as support for their position. In *Condee*, the petitioner moved to compel arbitration based on an arbitration agreement purportedly signed by an agent of the respondent. (*Condee,* at p. 218.) The trial court denied the petition, finding the petitioner had not properly authenticated the agreement.

10

(*Ibid*.)  The Court of Appeal reversed and remanded, holding a petitioner does not have to present evidence *authenticating* an arbitration agreement with the moving papers; the agreement will be presumed authentic unless and until the opposing party challenges the agreement's authenticity.  (*Id*. at p. 219.)  The court did not reach the issue whether the petitioner had presented sufficient evidence to establish agency; instead, the court remanded the matter to "permit the trial court to consider other issues," including whether the patient was bound by the agreement through the actions of his purported agent.  (*Id.* at p. 219 [remanding for consideration of other issues]; *id.* at p. 218 [setting forth other issues raised by defendant].)

*Condee* contains no discussion of the law of agency or how the moving party meets its burden of proving the signatory had the authority to execute the agreement; *Condee* addressed authenticity only.  (*Condee, supra,* 88 Cal.App.4th at pp. 218-219; see also *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846 ["Properly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration *or* in the event the authenticity of the signature is not challenged."].)  Kinder does not deny that James and Barbara signed the agreements or that the agreements are authentic; the issue is whether they had the authority to execute them on Kinder's behalf.

Our opinion in *Gamboa, supra,* 72 Cal.App.5th 158 similarly does not establish the moving party can make a prima facie showing of agency merely by attaching an arbitration agreement purportedly signed by the agent.  In *Gamboa,* we articulated the shifting burdens of production that apply in

11

motions to compel arbitration where the moving party seeks to enforce an arbitration agreement *signed by the opposing party*. We held "[t]he burden of persuasion is always on the moving party to prove the existence of an arbitration agreement" but "the burden of production may shift in a three-step process." (*Id.* at pp. 164-165.)

We explained:  "First, the moving party bears the burden of producing 'prima facie evidence of a written agreement to arbitrate the controversy.'  [Citation.]  The moving party 'can meet its initial burden by attaching to the [motion or] petition a copy of the arbitration agreement *purporting to bear the [opposing party's] signature*.'  [Citation.]  Alternatively, the moving party can meet its burden by setting forth the agreement's provisions in the motion.  [Citation.]  For this step, 'it is not necessary to follow the normal procedures of document authentication.'  [Citation.] . . . . [¶]  If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then in the second step, the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement. . . .  [¶]  If the opposing party meets its burden of producing evidence, then in the third step, the moving party must establish with admissible evidence a valid arbitration agreement between the parties.  The burden of proving the agreement by a preponderance of the evidence remains with the moving party." (*Gamboa, supra,* 72 Cal.App.5th at pp. 165-166, italics added.)

Under the *Gamboa* framework, the moving party is entitled to a presumption, in the first instance, that the agreement to arbitrate is authentic.  But defendants here do not meet their prima facie burden to show Kinder agreed to arbitrate the

12

dispute merely by proving the authenticity of the agreements. Again, plaintiff does not dispute that Barbara and James signed the agreements or that the form agreements contained language stating that Barbara and James certified they had Kinder's authority to execute the agreements. But, as previously discussed, Barbara and James's statements alone are not sufficient to prove Kinder authorized them to enter into an arbitration agreement on her behalf.

*Condee* and *Gamboa* must be read in light of the long line of authority, cited above, establishing a defendant seeking to compel arbitration must submit *evidence* to prove the plaintiff took some affirmative action that would support a finding of actual or ostensible authority, and cannot rely on the purported agent's representations alone in order to meet that burden.

*Condee* and *Gamboa* must also be read in light of *Engalla v. Permanente Medical Group* (1997) 15 Cal.4th 951, 972 and *Rosenthal v. Great Western Financial Securities Corporation* (1996) 14 Cal.4th 394, 413, in which the Supreme Court held the moving party bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. Allowing the moving party to meet its initial burden by presenting an agreement signed by a third party, without more, would be inconsistent with this authority because it would not constitute prima facie evidence that the *plaintiff* agreed to arbitrate.

Defendants make much of the fact Kinder did not submit a declaration in the trial court disavowing her children's authority, but that is of no moment: The burden never shifted to Kinder because defendants failed to meet theirs. (See *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1173

13

(*Goldman*) ["[I]t was not plaintiff's burden to show [the patient's wife] did not have authority to sign on behalf of her husband.  It was defendants' burden to establish that either [the patient] himself, or [the patient's wife] with authority, agreed to arbitration."]; see also *Rogers, supra*, 75 Cal.App.5th at pp. 1074-1075 ["The burden of proving that a purported agent had the authority to act for the purported principal in a particular circumstance lies with the persons dealing with the agent."].)

Defendants assert Kinder led them to believe her children had authority and effectively ratified the arbitration agreements by "not objecting" and "allow[ing]" her children "to review multiple arbitration agreements and act on her behalf." However, defendants did not produce any evidence to support these assertions.  The record is silent as to whether Kinder objected to the arbitration agreements or whether she allowed her children to do anything on her behalf.  But even if defendants had presented evidence to support those purported facts, that would not be sufficient to establish ostensible agency.  A defendant cannot prove a plaintiff consented to arbitration merely by showing the plaintiff stood idly by while the purported agent signed on his or her behalf.  (See *Goldman, supra*, 220 Cal.App.4th at p. 1173 [rejecting facility's argument that the patient's "silence on the matter be considered to be an adoptive admission of the arbitration agreements signed by" the patient's wife]; *Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 448-449.)

Defendants further contend Kinder ratified the arbitration agreements by "accepting the benefits of continuing to reside" at the facility.  There is no basis for any such inference.  The agreements expressly state the "execution of this arbitration

14

agreement is not a precondition to receiving medical treatment or for admission to the Facility," and thus Kinder's agreement to arbitrate cannot be inferred from the mere fact that she accepted treatment. Further, defendants were prohibited by statute from imposing any such condition. (See Health & Saf. Code, § 1599.81, subd. (a) ["[a]ll contracts of admission that contain an arbitration clause shall clearly indicate that agreement to arbitration is not a precondition for medical treatment or for admission to the facility"]; see also *Warfield v. Summerville Senior Living, Inc., supra*, 158 Cal.App.4th at pp. 450-451 [wife's continued acceptance of facility's services under admission documents did not constitute acceptance of the benefits of an agreement to arbitrate contained in "a different, optional agreement"].)

Finally, defendants contend reversal of the trial court's order is necessary to "further the well-established public policy" in favor of arbitration. But "there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate." (*Goldman v. Sunbridge Healthcare, LLC, supra,* 220 Cal.App.4th at p. 1169, quotation marks omitted; see also *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 846 [rejecting "defendants' tacit argument that 'public policy' may override the lack of consent to arbitration"]; *Young, supra,* 220 Cal.App.4th at p. 1128 ["'the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement'"].)

In sum, defendants failed to establish James or Barbara had actual or ostensible authority to bind Kinder to arbitration, and the court therefore properly denied the motion.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Respondent is to recover her costs on appeal.


ESCALANTE, J.[*]

We concur:


PERLUSS, P. J.


FEUER, J.

---

[*]     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.