Filed 9/28/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MIGUEL CABALLERO et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>PREMIER CARE SIMI VALLEY LLC,<br><br>    Defendant and Appellant. | 2d Civ. No. B308126<br>(Super. Ct. No. 56-2020-00541844-CU-MM-VTA)<br>(Ventura County) |

   Premier Care Simi Valley LLC dba Simi Valley Care Center (Premier Care) appeals from an order denying a petition to compel arbitration. Miguel Caballero, who declares he reads and writes only in Spanish, signed a two-page "RESIDENT-FACILITY ARBITRATION AGREEMENT" (Arbitration Agreement) when his mother, Maria Paz-Anaya Caballero, was admitted to Premier Care. The Arbitration Agreement is in English. Three years after signing the agreement Caballero and his siblings (plaintiffs) brought this wrongful death action against Premier Care and other defendants.

In denying Premier Care's petition to compel arbitration, the trial court found it had failed to sufficiently inform Caballero of the Arbitration Agreement's contents. The record, however, does not support this finding. A party who does not understand English sufficiently to comprehend the contents of a contract in that language is required to "have . . . it read or explained to him." (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 687 (*Ramos*).) The record confirms that Caballero signed the Arbitration Agreement notwithstanding his limited English skills and that neither Caballero nor any family member provided evidence of the circumstances surrounding the signing. The Premier Care representative, Stacy Elstein, also had no specific recollection of the transaction. Hence, there is no evidence that Caballero either requested assistance in understanding the document or was prevented from obtaining such assistance.

As the parties acknowledge, the Arbitration Agreement complies with the requirements of Code of Civil Procedure section 1295 for arbitration clauses in medical service contracts. Consequently, as a matter of public policy, the Arbitration Agreement "is not a contract of adhesion, nor unconscionable nor otherwise improper." (*Id.*, subd. (e); *Bolanos v. Khalatian* (1991) 231 Cal.App.3d 1586, 1590 (*Bolanos*).) In the absence of any evidence that Caballero communicated his inability to read the Arbitration Agreement prior to signing it, the petition to compel arbitration should have been granted. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

Article 1 of the Arbitration Agreement provides: "It is understood that any dispute as to medical malpractice, that is, as to whether any medical services rendered under this contract were unnecessarily or unauthorized or were improperly, negligently or incompetently rendered will be determined by

2

submission to arbitration as provided by California law, and not by a lawsuit or resort to court process, except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration."

The Arbitration Agreement further states in red print: "NOTICE: BY SIGNING THIS CONTRACT, YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT." The document also states in red print: "NOTICE: BY SIGNING THIS CONTRACT, YOU ARE AGREEING TO HAVE ALL MONETARY DISPUTES EXCEPT COLLECTIONS AND EVICTIONS DECIDED BY ARBITRATION, AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. YOU DO NOT, HOWEVER, GIVE UP YOUR RIGHTS TO SUE FOR VIOLATION OF THE PATIENT'S BILL OF RIGHTS." Each "NOTICE" has a separate signature block.

Article 4 of the Arbitration Agreement advises that the "[a]greement to arbitrate is not a precondition for medical treatment or for admission to the Facility." By signing the agreement, however, Caballero "certifie[d] that [he] has read this Agreement, and has been given a copy, and is either the Resident, or is the representative of the Resident, duly authorized to execute the above and accepts its terms."

On November 17, 2019, Caballero's mother fell to the floor while she was being transferred by Premier Care's employees via

3

an "Invacare" hydraulic patient lift and body sling. She was seriously injured and died later that day.

Plaintiffs filed this action against Premier Care, Invacare Corporation and Simi Investment Properties LTD, alleging causes of action for medical negligence, violations of the Elder Abuse and Dependent Adult Civil Protection Act and product liability. Premier Care petitioned to compel binding arbitration pursuant to the Arbitration Agreement. Plaintiffs opposed the petition.

Caballero did not deny signing the Arbitration Agreement but declared: "My primary speaking, reading and writing language is Spanish; I cannot read English, nor can I understand spoken English except in a very limited sense." He further declared: "To my best recollection, during the time that my mother was admitted as a patient to [Premier Care], I was not presented nor did I sign a Resident-Facility Arbitration Agreement in Spanish nor was I presented with an Agreement in English that was explained to me."

In its reply, Premier Care submitted the declaration of Stacy Elstein, who had signed the Arbitration Agreement on its behalf. Elstein stated: "When the subject Arbitration Agreement was signed on January 5, 2016, it was, and still is, my custom and practice to allow residents or their legal representatives to completely review the Admission Agreement, as well as the Arbitration Agreement, prior to signing them. In addition, it was, and still is my custom and practice to have a Spanish speaking staff member assist me by explaining/translating the Admission Agreement and Arbitration Agreement and to answer any questions the resident or their legal representative may have about said documents prior to said documents being executed when the resident or their legal representative appears not to

4

understand English." Elstein did not "recall the resident or her legal representative having any questions about the Admission Agreement or the Arbitration Agreement prior to said documents being signed by [her] and the resident's representative."

The trial court denied the petition to compel arbitration, finding that Caballero, as a non-English speaking signatory to the Arbitration Agreement, was not sufficiently informed of what he was signing. The court noted that Elstein's practice was to have a Spanish speaking staff member read the agreement and explain it to the non-English speaking resident representative but found "there [was] no showing . . . as to who that person was, or what he/she said to Mr. Caballero. A declaration from the involved staff member could potentially have clarified this to the extent of making the agreement enforceable. This absence is pivotal."

DISCUSSION

Premier Care asserts that Caballero's signatures on the Arbitration Agreement objectively demonstrated his assent to the arbitration provisions and that the trial court erred by shifting the burden to Premier Care to demonstrate that Caballero understood what he was signing. Cabellero contends the order denying the motion to compel arbitration must be affirmed because "[t]there is no evidence that it was explained to [him] that he was being given an arbitration agreement to sign."

*Standard of Review*

"The party seeking to compel arbitration has the burden of proving the existence of an enforceable arbitration agreement by a preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance any fact necessary to its defense." (*Baker v. Italian Maple Holdings LLC* (2017) 13 Cal.App.5th 1152, 1157 (*Baker*).) "'[T]he court sits as a

5

trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion to reach a final determination.' [Citation.] [T]he issue of whether an arbitration agreement exists is a 'preliminary question to be determined by the court. . . .' [Citations.] If that preliminary question requires the resolution of factual issues, then the court must resolve such issues . . . ." (*Id.* at p. 1158.)

"'Ordinarily, we review a denial of a petition to compel arbitration for abuse of discretion. [Citation.] However, where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo.'" (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541.) "If the [trial] court's decision regarding arbitrability is based on resolution of disputed facts, we review the decision for substantial evidence." (*Baker*, *supra*, 13 Cal.App.5th at p. 1158.)

### The Trial Court Erred by Denying the Petition
### To Compel Arbitration

Caballero does not dispute that his signatures appear on the Arbitration Agreement. He contends there was no "mutual assent" to the agreement because he cannot not read English and therefore did not understand he was waiving his right to a jury or court trial.

In California, "[g]eneral principles of contract law determine whether the parties have entered a binding agreement to arbitrate." (*Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 420.) "An essential element of any contract is the consent of the parties, or mutual assent." (*Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 270.) Further, the consent of the parties to a contract must be communicated by each party to the other. (Civ. Code, § 1565, subd. 3.) "Mutual assent is determined under an

6

objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." (*Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 141.) "A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).) "'[O]ne who accepts or signs an instrument, which on its face is a contract, is deemed to assent to all its terms, and cannot escape liability on the ground that he has not read it. If he cannot read, he should have it read or explained to him.'" (*Randas v. YMCA of Metropolitan Los Angeles* (1993) 17 Cal.App.4th 158, 163 (*Randas*); 1 Witkin, Summary of Cal. Law (11th ed. 2021) Contracts, § 118, pp. 159-160.)

Here, Caballero's outward manifestations, i.e., the signing of the Arbitration Agreement in two places and the initialing of the provision on "Retroactive Effect," demonstrated mutual assent and an intent to enter into the agreement. Absent fraud or overreaching, Caballero's inability to read English and his limited ability to speak or understand English do not alter the conclusion that his signatures and initials on the contract manifested his agreement to its terms. (See *Pinnacle, supra,* 55 Cal.4th at p. 236.)

Generally, a party may not avoid enforcement of an arbitration provision because the party has limited proficiency in the English language. If a party does not speak or understand English sufficiently to comprehend a contract in English, it is incumbent upon the party to have it read or explained to him or her. (*Ramos, supra,* 242 Cal.App.4th at p. 687; *Randas, supra,* 17 Cal.App.4th at p. 163 [swimming class release form in English

7

valid even though the signatory could only read Greek]; *Fields v. Blue Shield of California* (1985) 163 Cal.App.3d 570, 578 ["It is a general rule a party is bound by contract provisions and cannot complain of unfamiliarity of the language of a contract"].)

An exception to the general rule applies when a party was fraudulently induced to sign the contract. (*Ramos, supra*, 242 Cal.App.4th at p. 688 [contract void for fraud in the execution when party deceived as to nature of document]; *Metters v. Ralphs Grocery Co.* (2008) 161 Cal.App.4th 696, 702 [dispute resolution form failed to warn employee he was agreeing to binding arbitration].) This exception is inapplicable here, because Caballero does not contend Premier Care defrauded him or prevented him from learning the contract's terms. He simply states that, to the best of his recollection, he was not presented with an Arbitration Agreement in Spanish or an Arbitration Agreement in English that was explained to him. He cites no authority suggesting it was Premier Care's initial burden to ascertain whether he could understand the English version. All Caballero had to do was tell Elstein or one of Premier Care's Spanish-speaking employees that he cannot read English and the burden would have shifted to Premier Care to explain the contents of the Arbitration Agreement. His decision to sign a document he could not read is not a basis for avoiding an arbitration agreement. (See *Brookwood v. Bank of America* (1996) 45 Cal.App.4th 1667, 1674 ["'A party cannot use his own lack of diligence to avoid an arbitration agreement'"].)

We conclude the law and substantial evidence do not support the trial court's denial of Premier Care's petition to compel arbitration. Caballero assented to the contract terms by signing and initialing the Arbitration Agreement (*Randas, supra*, 17 Cal.App.4th at p. 163), and there is no evidence he asked

8

Elstein or any other Premier Care employee for a Spanish version of the agreement or assistance in understanding the English version. (See *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 431 [Plaintiffs' "failure to take measures to learn the contents of the document they signed is attributable to their own negligence"].) Moreover, the fact that the Arbitration Agreement has two uppercase notices in red, directly above the signature blocks, advising that signing the agreement would result in a waiver of a jury or court trial should have alerted Caballero to the significance of those provisions regardless of whether he could read them. On this record, Caballero's failure to take steps to learn the contents of the agreement is attributable to his own negligence and may not be imputed to Premier Care. (*Ibid.*)

DISPOSITION

The trial court's order denying Premier Care's petition to compel arbitration is reversed. On remand, the trial court is directed to grant the petition to compel arbitration and to stay the case as to Premier Care. Premier Care shall recover its costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

PERREN, J.

We concur:

YEGAN, Acting P. J.          TANGEMAN, J.

9

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Tracy D. Forbath, Kathleen M. Walker and Jeffrey S. Healey, for Defendant and Appellant.

Law Offices of Greg W. Garrotto, Greg W. Garrotto, for Plaintiffs and Respondents.