Filed 2/16/22  Naganuma v. Windsor Oakridge Healthcare Center CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| GARY NAGANUMA, et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>WINDSOR OAKRIDGE HEALTHCARE CENTER, LP, et al.,<br><br>    Defendants and Appellants. | A162113<br><br>(Alameda County Super. Ct. No. RG20062602) |

Defendants Windsor Oakridge Healthcare Center, LP d.b.a. Windsor Healthcare Center of Oakland, Brookdale Healthcare and Wellness Centre, LP d.b.a. Brookdale Healthcare and Wellness Center and d.b.a. Windsor Healthcare Centre of Oakland, SF Management Co., LLC, and Boardwalk West Financial Services, LLC (collectively, "Windsor") appeal from an order denying their petition to compel arbitration of this civil action filed by Gary Naganuma's estate and his heirs, wife Debbie Naganuma and daughter Allison Naganuma (collectively, "plaintiffs") based on the care Gary[1] received as a resident in a

_____

[1] Because the plaintiffs share the same last name, we use first names to ease the task of the reader.

skilled nursing facility they owned and operated. (Code of Civ. Proc., §§ 1281.2, 1294.)[2] We agree with the trial court that the plaintiffs are not bound by an arbitration agreement signed by Debbie admitting Gary into Windsor's facility, because Windsor did not prove that Debbie had the authority to act as Gary's agent for this purpose. We also conclude the trial court, and not the arbitrator, properly made this determination. We affirm.

## I. BACKGROUND

On May 28, 2020, plaintiffs filed a civil complaint alleging causes of action against Windsor for negligence, negligent infliction of emotional distress, elder abuse, violation of statutory rights, wrongful death and violation of the right to inspect and copy medical records. The complaint alleged that Gary was admitted to a skilled nursing facility in 2019 at the age of 66 for rehabilitation following the partial amputation of his foot due to diabetes, and that he died after a series of physical ailments culminating in sepsis caused by a bed sore.

Windsor filed a motion to compel arbitration, alleging that Debbie, as Gary's authorized representative, had signed a separate arbitration agreement on his behalf in connection with his admission to the Windsor facility. They attached the arbitration agreement signed by Debbie, in which she certified, "By virtue of Resident's consent, instruction and/or durable power of attorney, I hereby certify that I am authorized to act as Resident's agent in executing and delivering of this arbitration

---

[2] Further statutory references are to the Code of Civil Procedure.

2

agreement. I acknowledge that the facility is relying on this representation." Windsor did not present any evidence that Debbie was a conservator or guardian of Gary, that Gary was incapacitated in any way at the time of his admission, or that Debbie was acting pursuant to a power of attorney.

Plaintiffs opposed the motion to compel arbitration, arguing, among other things, that the arbitration agreement was not enforceable because it was not signed by Gary or by anyone acting with authority to sign it on his behalf. The trial court denied the motion to compel, ruling that there was no enforceable agreement as to plaintiffs. The court further ruled that assuming that Debbie had agreed to arbitration of her own claims by signing the agreement, the agreement was unenforceable as to her pursuant to section 1281.2, subdivision (c), because rulings in an arbitration of Debbie's claims could conflict with jury findings as to Gary and Allison.

## II. DISCUSSION

A. *Delegation Clause*

The fundamental question presented by the motion to compel arbitration was whether Gary agreed to arbitrate this controversy with Windsor when he did not personally sign the arbitration agreement, i.e., whether Debbie had authority to agree to arbitration on Gary's behalf. As a threshold matter, Windsor argues that the court did not have the authority to resolve this issue because it had been delegated to the arbitrator under the arbitration agreement. We disagree.

3

When the delegation issue is based solely on the language of the arbitration agreement itself, we review the issue de novo. (*Ajamian v. CantorCO2e* (2012) 203 Cal.App.4th 771, 782 & fn. 5 (*Ajamian*).)  Here, the parties offered no extrinsic evidence on the issue of delegation beyond the language of the agreement, so we apply a de novo standard.[3]

Windsor acknowledges that the trial court, not the arbitrator, is generally presumed to have the authority to resolve challenges to the enforceability of an arbitration clause, such as unconscionability.  (E.g., *Rent-A-Center West, Inc. v. Jackson* (2010) 561 U.S. 63, 68 (*Rent-A-Car*).)  It argues that the arbitrator should have determined the enforceability of the arbitration clause in this case, citing the rule that the parties may agree to delegate this power to the arbitrator when the language they use is "clear and unmistakable."  (*Tiri v. Lucky Chances, Inc.* (2014) 226 Cal.App.4th 231, 242; see also *Henry Schein, Inc. v. Archer & White Sales, Inc.* (2019) ___ U.S. ___ [139 S.Ct. 524, 529] (*Schein*); *First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944–945.)  Windsor points to language in the arbitration agreement that states, "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to

---

[3] Plaintiffs suggest that when the underlying evidence regarding a third party's authority to sign an arbitration agreement on behalf of another is in dispute, we should review the court's ruling for substantial evidence.  But they acknowledge that in this case, there is no conflict in the evidence.  In any event, we would reach the same result if we applied a substantial evidence standard.

4

resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement, including, but not limited to, any claim that all or part of this Agreement is void or voidable."

The language cited by Windsor would be clear and unmistakable evidence of an intent to delegate the issue of arbitrability from the court to the arbitrator *if* it had been demonstrated that Gary actually entered into the arbitration agreement which contains the delegation clause. (*Rent-A-Center*, *supra*, 561 U.S. at pp. 70–71; cf. *Ajamian*, *supra*, 203 Cal.App.4th at p. 784.) But although California has a strong policy favoring arbitration, there is no public policy favoring the arbitration of disputes the parties did not agree to arbitrate. (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.) When a party seeks to compel arbitration, the *trial court*—not the arbitrator—must initially determine in a summary proceeding whether an agreement to arbitrate exists. (§ 1281.2; *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*); see *Schein, supra*, ___U.S. ___ [139 S.Ct. 524, 530].) "To presume arbitrability without first establishing, independently, consent to arbitration is to place the proverbial cart before the horse." (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 252.)

Case law has recognized that when claims arise from a contract that does not itself contain an arbitration clause, the threshold question of whether there is an agreement to arbitrate (based, for example, on other contracts between the parties) is

5

properly decided by the court and not the arbitrator, notwithstanding the existence of a delegation clause in the contract containing the arbitration provision.  (See *Banc of California, National Assn v. Superior Court* (2021) 69 Cal.App.5th 357, 369–370; *Moritz v. Universal City Studios* (2020) 54 Cal.App.5th 238, 248; *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 656.)  Although in this case the contract on which the motion to compel arbitration is based contains an arbitration clause, that clause is only effective if it was signed by the principal or a person who had authority to bind the principal.  Otherwise, it cannot be said that the principal agreed to arbitrate the case.  (See *Ahlstrom v. DHI Mortgage Company, Ltd., LP* (9th Cir. 2021) 21 F.4th 631, 634–635 [parties cannot delegate issue of the formation of arbitration clause to arbitrator].)

Recently, a different Division of this Court squarely addressed the issue of whether the court or the arbitrator should decide arbitrability when an arbitration agreement contains a delegation clause but there is a dispute as to whether a family member had the authority to sign the arbitration agreement on behalf of a resident in connection with that resident's admission to a convalescent home.  (*Theresa D. v. MBK Senior Living LLC* (2021) 73 Cal.App.5th 18, 24] (*Theresa D.*).)  The court concluded "there is no public policy in favor of forcing to arbitration a person who has not agreed to it" and held the court, not the arbitrator, properly decided the gateway issue of whether there was an agreement to arbitrate.  "In the absence of an agreement,

6

made either directly by plaintiff or by one capable of binding [him] to arbitration, there would be no basis to require plaintiff to submit *any* issue to the arbitrator." (*Id.* p. 26.) We agree with the analysis in *Theresa D.* and conclude the court properly determined the threshold question of whether there was an agreement to arbitrate.

B. *Debbie was not Gary's Agent, and Gary Did Not Agree to Arbitrate his Claims*

Turning to the question of whether the trial court correctly determined the merits of the motion to compel, we note that its ruling was based not only upon the language of the arbitration agreement, but also upon its assessment of the evidence concerning Debbie's signature of the agreement on Gary's behalf, Gary's physical and mental condition at the time of his admission, and the absence of any evidence that Gary gave Debbie the authority to act on his behalf. The ruling thus involved a weighing of the evidence and we review the trial court's findings for substantial evidence. (See *Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317 (*Lopez*).)[4]

---

[4] Because Windsor had the burden of proving the existence of an arbitration agreement (*Rosenthal*, *supra*, 14 Cal.4th at p. 413; *Theresa D.*, *supra*, 73 Cal.App.5th at p. 24.), and because the substantial evidence standard is " 'typically implicated when a defendant contends that the plaintiff has succeeded at trial in spite of insufficient evidence' " (*In re Aurora P.* (2015) 241 Cal.App.4th 1142, 1156, we apply a modified version of the substantial evidence test. " 'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to

It is undisputed that Debbie was the person who signed the arbitration agreement on behalf of Gary, that she was not his conservator or guardian and that she was not acting under a power of attorney. (Compare *Gordon v. Atria Management Co., LCC* (2021) 70 Cal.App.5th 1020, 1026–1027; with *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 262–265 [adult children who had durable power of attorney had authority to enter into arbitration agreements on behalf of their mothers].) This leaves the question of whether Debbie was otherwise Gary's agent.

" '[A]n agency relationship may arise by oral consent or by implication from the conduct of the parties. [Citation.] However, an agency cannot be created by the conduct of the agent alone; rather, *conduct by the principal* is essential to create the agency.' " (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 587–588 (*Flores*) [nonsignatory patient at skilled nursing facility was not bound by arbitration agreement because her signatory husband was not her agent]; see also *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301–302 [comatose mother not bound by nursing home arbitration agreement signed by daughters because there was no evidence mother authorized daughters to act as her agents].)" (*Lopez, supra*, 39 Cal.App.5th at p. 318; see also *Golinger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 376–377 [daughter

---

support a finding." ' " (*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 966.)

8

whom the mother allowed to make medical decisions for her did not have authority to bind her to arbitration agreement].)

As the trial court recognized, while there was evidence from which it could be inferred that Debbie had represented that she was Gary's agent when she signed the arbitration agreement (the agreement said as much), there was no evidence from which the court could infer that Gary authorized Debbie to act on his behalf. Thus, there was no evidence that Gary, who apparently was in full possession of his capacities, was bound by the arbitration agreement signed by Debbie.

We are again guided by *Theresa D.*, *supra*, 73 Cal.App.5th 18, in which the court found the plaintiff, a resident of a residential care facility for the elderly who brought claims against the facility for elder abuse and neglect, was not bound by an arbitration agreement signed by her daughter. The court assumed that the daughter had the authority to place her mother in the facility, but concluded that this authority did not translate into authority to enter into an arbitration agreement. (*Id.* at p. 27.)

Windsor cites *Bolanos v. Khatarian* (1991) 231 Cal.App.3d 1586, 1591 (*Bolanos*) for the proposition that one spouse can bind the other to arbitration. The situation in that case is completely distinguishable from the one before us. There, a wife, husband, and child all alleged medical malpractice against the obstetrician who delivered the child for injuries suffered during the delivery. Wife, who was the patient, signed an arbitration agreement that purported to cover all claims arising from medical malpractice,

9

and this was held sufficient to require the arbitration of husband's claims for medical malpractice, even though he was a nonsignatory to the agreement. Nothing in *Bolanos* suggests that husband, who was not the patient, could have bound the wife to arbitrate her own claims had she not personally signed the arbitration agreement. (*Ibid*.)

Nor is Windsor assisted by *Hutcheson v. Eskaton Fountain Wood Lodge* (2017) 17 Cal.App.5th 937, 941 (*Hutcheson*), which affirmed the denial of a motion to compel arbitration on the ground that the decision to admit a resident to a residential care facility was a "health care decision" and the relative who signed the admission and arbitration agreements had a power of attorney that did not include health care decisions. (*Id*. at p. 957.) *Hutcheson* involved the proper scope of a power of attorney, which is not before us, and does not suggest that a relative acting without a power of attorney for healthcare decisions may bind a resident to arbitration.

Windsor argues that *Hutcheson* supports its position because it concludes that an arbitration agreement signed in connection with an admission to a convalescent facility is a "health care decision," and spouses are entitled to make "health care decisions" on behalf of each other. A similar argument was rejected in *Theresa D.*, in which the court noted, "[a]lthough a family member may place a person in [a residential care facility for the elderly] in appropriate circumstances (22 Cal. Code Regs., § 87101(r)(3)), the governing statutes and regulations say nothing about allowing the family member to waive the resident's legal

10

right to seek redress through the courts." (*Theresa D.*, *supra*, 73 Cal.App.5th at p. 31.)

C. *There is No Enforceable Arbitration Agreement as to Allison*

Windsor argues that Gary's daughter Allison is bound by the arbitration agreement signed by his wife, Debbie, relying upon language in that agreement stating that it is applicable to Gary's heirs. Because we conclude Debbie did not have the authority to bind Gary to arbitration, there was no agreement to arbitrate to be extended to Allison. (Cf. *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239; *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 841 [nonsignatories bound by extant arbitration agreements; no dispute about signatories' authority to sign agreements].)

D. *There is No Enforceable Agreement as to Debbie*

Windsor finally argues that the trial court should have ordered the case to arbitration on Debbie's claims. We disagree.

The trial court found that although Debbie had signed the arbitration agreement, it could not be enforced against her because (1) the agreement was unconscionable in that Debbie was "rushed" through the process of signing it and did not have a chance to review the documents or knowingly waive her right to a jury trial; (2) there was a possibility of conflicting rulings if Debbie's claims were arbitrated because the claims of Gary and Allison were not subject to arbitration and presented common issues of law and fact; and (3) the arbitration agreement was not in the format required by section 1295, which governs a "contract

11

for medical services." We conclude the court did not abuse its discretion in concluding the second factor applies.

Section 1281.2, subdivision (c) provides that arbitration will be ordered when there is an agreement to arbitrate unless "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." Although Windsor argues there was no possibility of conflicting rulings, it does so on the premise that Gary and Allison's claims are arbitrable, which as we have explained, is incorrect. There is no dispute the claims arise out of the same set of operative facts as Debbie's. (See *Birl v. Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1319–1323 [motion to compel arbitration properly denied under § 1281.2, subd. (c) where hospital and doctors with no arbitration agreement were involved in same transaction as nursing home with arbitration agreement]; *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 474 [no abuse of discretion in denying arbitration of heirs' wrongful death claims under § 1281, subd. (c) when decedent's claim for violation of Patient's Bill of Rights was not arbitrable and there was possibility of inconsistent rulings].)

Because the trial court's ruling was correct under section 1281.2, subdivision (c), we need not consider whether the arbitration agreement was unconscionable as to Debbie or whether it complied with section 1295. We also note that because

12

Debbie signed the arbitration agreement in her capacity as Gary's representative (a status that has been properly found by the trial court not to exist), the agreement did not purport to bind Debbie in her individual capacity. (See *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1176–1177.)

## III. DISPOSITION

The judgment (order denying motion to compel arbitration) is affirmed. Costs to plaintiffs/respondents.

_____

                    NEEDHAM, J.

We concur.

_____

JACKSON, P.J.

_____

BURNS, J.